The Marietta Municipal Court convicted appellant Charles Roberts of disorderly conduct for spitting in another man's face during a labor dispute. Appellant admits spitting at his victim, but nevertheless appeals the conviction and $100 fine. He assigns six errors for our review:
 1. "The Municipal Court erred in failing to grant a mistrial."
 2. "The Municipal Court erred in permitting the prosecution of a defendant who was the victim of selective prosecution."
 3. "The Municipal Court erred in refusing to permit the defendant to inquire into whether the alleged victim spit on women on two occasions in the labor dispute."
 4. "The Municipal Court erred in admitting hearsay upon hearsay under the guise that it was offered not for the truth of the matter asserted."
 5. "The verdict of guilty was against the substantial evidence in the case."
 6. "The Municipal Court committed cumulative error."
Finding none of the assignments meritorious, we affirm the appellant's conviction.
 I.
In September 1997, Magnetic Specialties, Inc. ("MSI") was embroiled in a longstanding labor dispute with unionized workers. Appellant, a labor union member, was one of several striking MSI workers who participated in a picket line at MSI. Bruce Cassady was an MSI employee who did not participate in the strike.
After finishing a shift on September 3, 1997, Cassady and other workers left MSI's building and encountered the union's picket line. Through a fence, workers and strikers participated in a heated verbal exchange which featured abusive language from both sides. Appellant shouted at Cassady that he was going to kill Cassady's girlfriend to "show [Cassady] what kind of man [appellant] was." Cassady did not consider these to be serious threats, but contributed his own offensive comments to the verbal war. Cassady shouted derogatory sexual remarks aimed at Diane Wells, appellant's fiancee. After Cassady's offensive remarks, appellant walked up to the fence, a few feet from Cassady, and spit in his face. A MSI security videotape of the confrontation between strikers and non-strikers shows appellant spitting at Cassady.
A security guard who witnessed the incident called the Marietta police. Officer J.C. Woods arrived at the scene and spoke with MSI security officer Michael Statkiewicz. Statkiewicz, who heard from a third party that appellant spit at Cassady, told Officer Woods what had happened. Officer Woods viewed the MSI security videotape and copied a segment showing appellant spitting at Cassady. Officer Woods did not obtain the entire videotape. Officer Woods also took a statement from MSI security officer Jason Reed, who witnessed appellant spitting at Cassady. Officer Woods issued a citation to appellant for disorderly conduct, in violation of Section 509.03 of the Marietta Code which states:
 (a) No person shall recklessly cause inconvenience, annoyance or alarm to another by doing any of the following: * * *
 (5) Creating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender.[1]
The municipal court convicted appellant of disorderly conduct and fined him $100. Appellant commenced this appeal.
 II.
The fifth assignment of error asks this court to reverse appellant's conviction on the basis that it is "against the substantial evidence." Appellant fails to clarify whether he believes the evidence is insufficient to sustain a conviction or whether he believes the verdict to be against the manifest weight of the evidence. The difference between these theories is substantial and not merely semantical. "Sufficiency" tests the legal adequacy of evidence produced at trial and whether, as a matter of law, the evidence could support a conviction if it is submitted to the finder of fact. State v. Thompkins
(1997), 78 Ohio St.3d 380, 386. on the other hand, "weight" concerns the "inclination of the greater amount of credibleevidence" and tests whether the rational persuasiveness of evidence is enough to sustain the prosecution's burden of proof. Id. at 387 (emphasis sic.) Although a verdict is supported by sufficient evidence, a court of appeals may nevertheless conclude that the verdict is against the manifest weight of the evidence. State v. Banks (1992), 78 Ohio App.3d 206,214. A sufficiency of the evidence challenge tests whether the state's case is legally adequate to go to a jury in that it contains prima facie evidence of all of the elements of the charged offense. State v. Martin (1983), 20 Ohio App.3d 172,175; Carter v. Estell (C.A.5, 1982), 691 F.2d 777, 778. A weight of the evidence argument merely tests the rational adequacy, i.e., persuasiveness of the evidence. The two tests are distinct, notwithstanding dicta to the contrary in State v.Jenks (1991), 61 Ohio St.3d 259, 273. See Thompkins, 78 Ohio St. 3
d at 390 (Cook, J., concurring). Appellant's brief cites authority supporting both a sufficiency of the evidence challenge and a manifest weight of the evidence challenge. In the absence of meaningful guidance by the appellant, we address both arguments and find them equally meritless.
In a review for sufficiency of the evidence, an appellate court must construe the evidence in a light most favorable to the prosecution. State v. Hill (1996), 75 Ohio St.3d 195, 205;State v. Grant (1993), 67 Ohio St.3d 465, 477; State v. Rojas
(1992), 64 Ohio St.3d 131, 139. Evidence is "sufficient" to support a conviction if a reasonable trier of fact considering the evidence could have found all essential elements of the crime beyond a reasonable doubt. State v. Allen (1995), 73 Ohio St.3d 626,630; State v. Loza (1994), 71 Ohio St.3d 61, 68-69;State v. Richey (1992), 64 Ohio St.3d 353, 364.
In this case, sufficient evidence exists to support appellant's conviction. In addition to having the incident captured on videotape, appellant himself admitted spitting on Cassady. The prosecution presented testimony from Cassady establishing that appellant's act was "kind of sick" and that appellant's spit was all over Cassady's face and glasses. This testimony establishes that appellant's action was offensive and caused Cassady annoyance and alarm within the meaning of the disorderly conduct ordinance. Finally, the record shows sufficient evidence to show that appellant's conduct had "no lawful purpose." Appellant admitted during cross-examination that he spit on Cassady in order to "release my anger so I would not cross the fence and do anything that I shouldn't had [sic] doing." This evidence, whether construed favorably for the state or not, sufficiently establishes that appellant had no lawful purpose. Notwithstanding the fact that the victim in this case acted like a "jerk," we cannot characterize spitting at another person as a privileged means of releasing one's anger.
We next analyze whether appellant's conviction is against the manifest weight of the evidence. In making this determination, we must "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted." State v. Stepp (1997),117 Ohio App.3d 561, 567; State v. Miller (1995), 105 Ohio App.3d 679,688. Our review, however, "is tempered by the principle that questions of weight and credibility are primarily for the trier of fact." State v. Garrow (1995), 103 Ohio App.3d 368,371. A conviction will stand if there exists substantial evidence upon which a rational trier of fact could conclude that the prosecution has proven all elements of an offense beyond a reasonable doubt. State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph two of syllabus.
Appellant does not deny that he spit in Cassady's face. Instead, he makes three principal arguments in disputing the trial court's verdict. First, the appellant argues that Cassady provoking him into spitting creates a legal defense. Second, the appellant disputes the trial court's finding that his spitting on Cassady served no lawful purpose. Third, the appellant attacks the credibility of the evidence used to establish that his action was physically offensive and caused inconvenience, annoyance, or alarm. We reject the appellant's arguments and find substantial evidence supporting the verdict.
In his first argument, appellant highlights the insults Cassady hurled toward Ms. Wells, arguing that their vile nature justified the spitting. Appellant argues that the insults yelled by Cassady were "fighting words" in the sense that they were likely to provoke the average person to an immediate breach of the peace. See Cincinnati v. Karlan (1974), 39 Ohio St.2d 107, paragraph two of syllabus; see, also, State v.Miller (1996), 110 Ohio App.3d 159, 163 (person may not be punished for disorderly conduct solely for abusive language unless he utters "fighting words"). Thus, because Cassady's words could have been punished as disorderly conduct in and of themselves, appellant contends it was proper for him to spit in Cassady's face as a response.
We recognize that Cassady provoked the incident and, arguably, he got what he deserved. However, appellant's satisfaction comes at a cost. Cassady's remarks were inflammatory and in some manner of speaking, we find appellant's response more measured than it might have been. Yet, "vigilante justice," however appealing to our emotions, cannot be doled out absent the expectation of legal repercussions. Put simply, while we respect appellant's sense of honor, we cannot officially condone his conduct. Cassady's actions provide no defense or legal justification for the appellant's conduct. See State v. Linder (Feb. 10, 1992), Stark App. No. CA-8689, unreported (fact that person may have "prompted, provoked, or at least participated in the disorderly conduct is neither an affirmative defense nor justification * * *").
When provocation is applicable in the criminal context, it serves as a mitigating factor only, not a complete defense. See, e.g., State v. Rhodes (1992), 63 Ohio St.3d 613, 617-18
and fn.2 (voluntary manslaughter is an "inferior degree" of murder that results when defendant proves an applicable mitigating circumstance such as provocation); State v. Deem
(1988), 40 Ohio St.3d 205, 210-11 (aggravated assault is an "inferior degree" of felonious assault that results when defendant proves mitigating circumstance such as provocation). Appellant's argument inappropriately tries to fit the square peg of provocation into the round hole of a complete defense to disorderly conduct. Although appellant cites State v. Cortner
(1992), 76 Ohio App.3d 648 for the proposition that we may craft some type of justification defense for disorderly conduct, the case is readily distinguishable. In Cortner, a teacher was convicted for disorderly conduct under R.C.2917.11(A)(1), which deals with fighting or other "turbulent behavior." The teacher subdued an unruly student with behavioral problems by using a bear hug. The teacher's teeth came in contact with the child's shoulder as the child continued to struggle, leading to the student's allegation that the teacher bit him. The Third District held the teacher's conviction to be against the manifest weight of the evidence. The court held that R.C. 3319.41, which allows a teacher to use reasonable force against a pupil when necessary for discipline, provided a statutory defense specifically applicable to the conduct involved in that case. Appellant cites no suchstatutory defense specifically applicable in this case.
Appellant next argues that his action served a lawful purpose. Because lack of lawful purpose is an element of Section 509-03(a)(5), appellant contends that the prosecution did not meet its burden of proof. Appellant's purported lawful purpose was defending his fiancee after Cassady's insults. This argument fails for two reasons. First, his "defense of others" justification is inapplicable to the facts of this case. Using force to defend another person is a viable defense only when a defendant reasonably believes that his conduct is necessary to defend against the imminent use of unlawful force. SeeColumbus v. Dawson (1986), 33 Ohio App.3d 141, 141-42; Akron v.Dokes (1986), 31 Ohio App.3d 24, 25. In this case, there is no allegation that Cassady did anything other than yell insults toward Wells. Appellant makes no claim that he believed Cassady was going to use force against wells. Thus, there could be no lawful purpose based on a purported defense of Wells. Second, the appellant testified that his real purpose was simply to release his anger. While releasing one's anger may be lawful in the abstract, we cannot characterize it as a lawful purpose for spitting in another person's face. The trial court's determination that the appellant's conduct served no lawful purpose is not against the manifest weight of the evidence.
The appellant also contends that his spitting at Cassady was not physically offensive and did not cause "inconvenience, annoyance or alarm" to another person.[2] Substantial evidence existed for the court to conclude that the appellant's act satisfied these elements of Section 509.03(a)(5) disorderly conduct. Cassady testified that the appellant's action was "kind of sick" and that spit was "all over" his face. While the physically offensive nature of spit in Cassady's face tends to speak for itself, it is also implicit in this testimony. The record also provides ample evidence that Cassady suffered "inconvenience, annoyance, or alarm." The appellant spit all over Cassady's face, forcing Cassady to remove his glasses. An MSI security guard testified that Cassady appeared highly upset and agitated after the incident. Officer Woods added that Cassady was still stewing about the incident when he arrived at the scene. The prosecution met its burden of proof regarding the physically offensive nature of the appellant's act and its inconvenience, annoyance, and alarm to other persons. Cf. Statev. Warf (1991), 72 Ohio App.3d 604, 607-08 (witness's testimony that defendant's action was annoying and offensive because of its effect on other persons helps to prove disorderly conduct).
Finally, the appellant argues ad nauseam that Cassady was not credible, essentially asking us to reject his testimony. We decline to do so. Weight and credibility of testimony are primarily functions of the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of syllabus. We see no reason to disturb the trial court's weighing of evidence and credibility in this case. Finding the appellant's conviction supported by the evidence, we reject the fifth assignment of error.
 III.
In his first assignment of error, appellant argues that the trial court should have granted a mistrial. Appellant requested a mistrial on two separate occasions, arguing that he was not provided with certain materials helpful to the defense. First, the appellant argues he should have been provided with the entire MSI security videotape and not just the portion showing him spitting in Cassady's face. Second, the appellant contends that he should have been provided with the internal reports that MSI security officers Mike Statkiewicz and Jason Reed prepared several hours after the spitting incident. The essence of the appellant's argument is that the court should have granted a mistrial because he failed to receive sufficient pretrial discovery. Appellant's argument is unpersuasive.
Crim.R. 16(B)(1) governs what the prosecution must disclose to the defense prior to trial and states in part:
 (c) Documents and tangible objects. Upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, available to or within the possession, custody, or control of the state, and which are material to the preparation of his defense, or are intended for use by the prosecuting attorney as evidence at trial, or were obtained from or belong to the defendant.
* * *
 (f) Disclosure of evidence favorable to defendant. Upon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the defendant all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilt or punishment. * * *
(Emphasis added.)
Crim.R. 16(B)(1)(c) and 16(B)(1)(f) thus provide for discovery of documents which are either: (1) exculpatory or otherwise material to the defense; (2) intended to be used by the prosecution, or (3) obtained from the defendant. State v.Steen (June 28, 1994), Vinton App. No. 93CA490, unreported. In this case, both items sought by the appellant belong to MSI and neither one was introduced at trial. Thus, the prosecution violated Crim.R. 16(B)(1) only if the items were material to the appellant's defense.
Before we analyze whether the disputed items are material, we must decide the threshold question of whether the state has failed to disclose them. The state must have possession, custody, or control of documents and tangible items before they are subject to disclosure. See State v. Lawson (1992), 64 Ohio St.3d 336,344 (state's obligation to disclose evidence material to guilt or punishment applies only to evidence in its possession). The record shows that the prosecution denied having possession of either the full security videotape or the internal MSI report. Appellant does not seriously dispute this fact. Indeed, it appears that the appellant knew that certain items might not have been in the state's possession and therefore subpoenaed several items directly from MSI. The appellant seeks to make the state accountable for MSI's alleged failure to provide the items in dispute. Appellant contends that an "interrelation" between the state, the Marietta Police Department, and MSI security makes MSI's alleged "suppression" of evidence attributable to the state.
Appellant asserts the broad argument that acts of private security personnel may be "state action" for constitutional purposes, as well as for the purposes of criminal discovery violations and sanctions. The record shows that MSI security personnel videotaped the picket line, allowed Officer Woods of the Marietta Police Department to view the tape and copy the relevant portion, and gave statements to the police following the spitting incident. MSI security personnel also created written statements for its own internal records. The record is devoid of any evidence that MSI acted as an agent of the state while engaging in any of these activities. See State v. Zirkle
(Aug. 27, 1997), Meigs App. No. 95CA21, unreported (state not responsible for destruction of potentially relevant audiotapes possessed by victim, even though prosecution knew of the audiotapes' existence, absent evidence that victim was agent of the prosecution). Instead, the record shows that MSI security acted for the private benefit of MSI and not with the cloak of any state authority. Cf. State v. Bolan (1971), 27 Ohio St.2d 15,17-18 (security officer who apprehended shoplifter was simply employee of department store acting on store's behalf and therefore not a state actor).
Nevertheless, appellant throws together a hodgepodge of state action arguments, based on constitutional civil rights jurisprudence, in trying to transform MSI's conduct into suppression of evidence by the state. First, under the "public function doctrine," the appellant argues that private acts are attributable to the state when the state has delegated a traditional state function to a private entity. See Flagg Bros.v. Brooks (1978), 436 U.S. 149, 159-60, 98 S.Ct. 1729, 1735,56 L.Ed.2d 185. Appellant contends that MSI security is basically engaged in police activity, which is a traditional state function. Appellant's characterization is misplaced because the record fails to show that MSI exercises any police authority on behalf of Marietta. Id. (public function doctrine has a requisite of exclusive delegation of an exclusive prerogative of the state). Second, the appellant argues that formally private conduct is state action if it is significantly encouraged by state. See Blum v. Yaretsky (1982), 457 U.S. 991,1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534. The only "significant encouragement" appellant pinpoints is the Marietta Police Department's use of evidence gathered from MSI security, which the appellant alleges to be "subject to manipulation." The appellant points to no evidence in the record establishing any more significant relationship between MSI security and the Marietta police. Mere reliance on the actions of a private party, however, does not transform the private activity into state action. See Id. (mere approval or acquiescence in initiatives of a private party does not justify finding state action); see, also, Jackson v. Metropolitan Edison Co. (1974),419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (must be "sufficiently close nexus" between state and private action before action of latter can be "fairly treated" as state action). Appellant also cites the venerable case of Burton v.Wilmington Parking Authority (1961), 365 U.S. 715, 81 S.Ct. 856
to support his tenuous state action argument, noting that state action exists when there are "benefits mutually conferred" between a private party and the state. Appellant, however, does not explain how the state and MSI security have any symbiotic relationship akin to that in Burton so as to make MSI's conduct attributable to the state. Finding none of the appellant's arguments persuasive, we find no basis to conclude that the prosecution suppressed any discoverable materials from the defense.
Even if the state possessed the evidence complained of by the appellant, we do not find the disputed items to be material. Items are material only if there is a reasonable probability that, had the evidence been disclosed, the result of the trial would have been different. State v. Jackson (1991), 57 Ohio St.3d 29,33; State v. Johnston (1988), 39 Ohio St.3d 48, paragraph five of syllabus. There is no reasonable probability that the evidence complained of in this case would have resulted in the appellant's acquittal. The appellant argues at length about what the disputed evidence might have shown, namely that the appellant was provoked and that inconsistencies may have emerged between the disputed evidence and the testimony of witnesses. However, the mere possibility that evidence might have revealed certain facts is not enough to make the evidence "material." See Jackson, 57 Ohio St.3d at 33. Further, the appellant admitted the very act for which he was convicted, i.e., spitting in Mr. Cassady's face. Thus, the only relevance of the missing evidence would have been its support of the appellant's purported defense that Cassady provoked him. As we have already indicated, this is not a defense to disorderly conduct under Section 509.03(a)(5) of the Marietta Code.
Even if there had been some suppression of material evidence attributable to the state, appellant also fails to persuade us that mistrial would have been the appropriate sanction. In assessing the imposition of sanctions for Crim.R. 16 violations, the trial court must inquire into the circumstances of any violation and impose the least severe sanction possible that is consistent with the purposes of the discovery rules.City of Lakewood v. Paipadelis (1987), 32 Ohio St.3d 1, paragraph two of syllabus; State v. Parsons (1989), 64 Ohio App.3d 63,70. Significantly, even without finding a discovery violation by the prosecution, the trial court offered appellant's counsel a continuance to allow him to receive the disputed materials by way of subpoena from MSI. Appellant's counsel declined the opportunity for a continuance, insisting on a mistrial. Thus, any purported prejudice to the defense from the missing materials appears to be self-inflicted.
Appellant's first assignment of error is overruled.
 III.
In his second assignment of error, appellant complains that he has been the victim of selective prosecution. Appellant argues that MSI workers have not been prosecuted for similar acts of disorderly conduct during the MSI labor dispute. Appellant therefore claims that law enforcement has impermissibly discriminated in favor of MSI's active workers and against the striking union members.
It is well-settled that the state denies equal protection of the laws when it makes "unjust and illegal discriminations between persons in similar circumstances, material to their rights * * *." State v. Flynt (1980), 63 Ohio St.2d 132, 134
(quoting Yick Wo v. Hopkins (1886), 118 U.S. 356, 373-74). In order to establish a case of "selective prosecution," a criminal defendant must make a prima facie showing:
 (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights."
Id. The defendant's burden of establishing discriminatory prosecution is a heavy one. State v. Freeman (1985), 20 Ohio St.3d 55,58. "The mere failure to prosecute other violators of the statute which appellants were charged with violating does not establish the defense of selective prosecution." Id.
Selectivity in enforcement does not constitute a constitutional violation unless the discrimination is "intentional or purposeful." Flynt, 63 Ohio St.2d at 134 (quoting Snowden v.Hughes (1944), 321 U.S. 1, 8). Moreover, the mere existence of a potential discriminatory purpose does not, by itself, show that such purpose motivated a particular defendant's prosecution. Freeman, 20 Ohio St.3d at 58.
Appellant fails to meet his heavy burden in this case. Appellant's lone argument assails his conviction on the basis that non-striking MSI employees, on both September 3, 1997 and other purported occasions, were not charged with disorderly conduct. Appellant presents no other evidence of discriminatory motive other than this purported anomaly. A court will not presume intentional invidious discrimination from a simple showing of differing treatment. Id. See, also, State v. Spencer
(Nov. 4, 1998), Scioto App. No. 97CA2536, unreported (presumption exists that state prosecutes criminal law violation in good faith). Appellant's showing in this case is insufficient to support a selective prosecution defense.
Moreover, appellant has not shown that the state has failed to prosecute other persons similarly situated. The record supports appellant's contention that both strikers and nonstriking MSI employees were yelling and cussing at each other across the picket line. However, appellant's conviction was based on his conduct of spitting in Cassady's face. The record bears no evidence that anyone else besides appellant spit in another person's face during this confrontation. While appellant argues that Cassady spit on striking workers on two other occasions, there is no evidence in the record to support this contention and no evidence to show, even if Cassady did so, that the incident was complained of to the authorities. Further, the record shows that Cassady pled no contest to disorderly conduct in connection with the MSI labor dispute for conduct prior to appellant's arrest. This undermines appellant's argument that the Marietta Police Department has discriminated between strikers and non-strikers in making arrests in conjunction with the labor dispute. Appellant's evidentiary showing falls short of establishing selective prosecution for disorderly conduct in connection with the MSI labor dispute.
Under the second assignment of error, appellant also argues that the Marietta ordinance proscribing disorderly conduct is unconstitutionally vague. Appellant singles out the phrases "inconvenience, annoyance, or alarm" and "no lawful or reasonable purpose to the offender" as leaving him to guess as to the ordinance's meaning.
Legislative enactments generally enjoy a strong presumption of constitutionality. State v. Collier (1991), 62 Ohio St.3d 267,269. The party challenging a statute as unconstitutional has the burden of proving that assertion beyond a reasonable doubt. Id. To make a successful vagueness challenge,
 "* * * the challenging party must show that the statute is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. * * *' Coates v. Cincinnati (1971), 402 U.S. 611, 614
[91 S.Ct. 1686, 1688, 29 L.Ed.2d 214, 217]. In other words, the challenger must show that upon examining the statute, an individual of ordinary intelligence would not understand what he is required to do under the law. Thus, to escape responsibility * * *, appellee must prove, beyond a reasonable doubt, that the statute was so unclear that he could not reasonably understand that it prohibited the acts in which he engage."
State v. Anderson (1991), 57 Ohio St.3d 168, 171 (emphasis added). Vague statutes and ordinances not only fail to give notice of prohibited conduct, but also encourage arbitrary and erratic arrests and convictions. Marietta v. Grams (1987),40 Ohio App.3d 139, 141; see, also, Papachristou v. City ofJacksonville (1972), 405 U.S. 156, 162, 92 S.Ct. 839,31 L.Ed.2d 110; Grayned v. Rockford (1972), 408 U.S. 104,92 S.Ct. 2294, 33 L.Ed.2d 222.
The appellant's vagueness argument can only succeed if a reasonable person could not understand that spitting in Mr. Cassady's face would violate Section 509.03(a)(5) of the Marietta Code. The argument is not persuasive. Even if we indulge the notion that the ordinance is not precisely worded, we must consider the challenged language "in the context it is used in the law, and not as it stands alone." Pendrey v. Barnes
(1985), 18 Ohio St.3d 25, 27. Simply because a broadly worded ordinance may create doubt and confusion in some instances does not render it unconstitutionally vague on its face. Anderson,supra, 57 Ohio St.3d at 173 fn.2; see, also, State v. Hoffman
(1979), 57 Ohio St.2d 129, paragraph two of syllabus (holding that constitutionality of Ohio disorderly conduct statute must be authoritatively construed in light of particular facts and circumstances in speech cases). The vagueness doctrine is "not a principle designed to convert into a constitutional dilemma the practical difficulties of drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." Pendrey, 18 Ohio St.3d at 27
(quoting Colten v. Kentucky (1972), 407 U.S. 104, 110).
The language in Section 509.03(a)(5) does not leave a reasonable person guessing as to whether spitting in another individual's face is prohibited. The ordinance generally seeks to prohibit obnoxious conduct that disturbs reasonable human sensibilities. "Inconvenience, annoyance, and alarm" are qualities of harm associated with offensive conduct that are capable of objective measurement and determination at trial. Similarly, whether certain conduct serves "no lawful purpose" is a matter of evidence to be determined at trial.
Finding the selective prosecution and vagueness challenges without merit, we overrule the appellant's second assignment of error.
 IV.
The third assignment of error addresses the trial court's alleged refusal to permit appellant's counsel to inquire as to specific instances of Cassady's conduct during cross-examination. The record reveals that appellant's counsel tried to ask Cassady about two instances in which Cassady allegedly spit at participants in the MSI strike:
 Q. [by appellant's counsel] * * * Now, you knew Mr. Roberts from previous incidents at MSI and that's essentially what you told the police, isn't it?
A. [by Cassady] Yes.
 Q. Okay. Is it not true that two of those incidents involved occasions where you yourself spit on strikers?
A. No, it's not.
 Q. Okay. Would you deny that you spit on a woman by the name of Doris Whitehair on April 22, 1997?
MR. MOORE: Objection, your Honor.
THE COURT: Sustained.
* * *
 Q. (Mr. Cogan continuing) Now, let me ask you the same question about Rhonda Morgan on 5/27/97. Do you recall spitting on Rhonda Morgan, an MSI steelworker, on 5/27/97?
A. No, I don't.
Appellant argues that he should have been allowed to question Cassady about his alleged prior spitting escapades. Appellant contends that these specific incidents involving Cassady impact his credibility as a witness. Appellant also argues that the prior incidents are relevant to whether Cassady believed that spitting on another individual was physically offensive and served no lawful purpose, two of the elements of disorderly conduct.
We limit our review of this assignment of error to the trial court's refusal to allow questioning on the Doris Whitehair incident because this was the only inquiry the court did not permit. The record reveals that appellant asked a general question, without objection, about the two alleged incidents. The trial court sustained the state's objection to appellant's further inquiry related to the Doris Whitehair incident. However, the state failed to object moments later when appellant's counsel asked Cassady specifically about the Rhonda Morgan incident. Despite the court sustaining one objection, appellant was still allowed to ask about the alleged prior incidents, obtaining Cassady's denials in response. Thus, the only conceivable error that appellant may raise surrounds the trial court's refusal to allow specific inquiry into the Doris Whitehair incident.
Evid.R. 608(B) governs the cross-examination of a witness concerning specific instances of conduct for purposes of impeaching the witness's credibility:
 Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness * * * may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness * * * concerning the witness's character for truthfulness or untruthfulness * * *.
(Emphasis added.)
We fail to see how Cassady's alleged spitting at Doris Whitehair could be "clearly" probative of his truthfulness or untruthfulness. Assuming the incident took place, Cassady's conduct, at most, would be evidence of weak moral character. This type of evidence is not admissible to attack a witness's credibility. State v. Mann (1985), 19 Ohio St.3d 34, 37 fn.4. Thus, the trial court correctly excluded improper impeachment inquiry.
Appellant also argues that the Whitehair incident is relevant to whether appellant's spitting on Cassady satisfies the elements of disorderly conduct. Appellant's counsel proffered that, if allowed to continue, he would have asked Cassady whether he believed he had caused inconvenience, annoyance, or alarm to Ms. Whitehair by spitting and whether he believed his spitting on Ms. Whitehair to be physically offensive. Ironically, appellant's counsel did not attempt to ask these same questions concerning the Rhonda Morgan incident, about which appellant's counsel was allowed to inquire.
The record does not reveal why the trial court excluded evidence regarding the Whitehair incident. It is reasonable to conclude, however, that the trial court found the evidence irrelevant to appellant's offense. See State v. Heinish (1990),50 Ohio St.3d 231, 239. Evidence is relevant only if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Evid.R. 401. A trial court possesses discretion, however, in determining the relevance and admissibility of evidence. Id.; Renfro v. Black
(1990), 52 Ohio St.3d 27, 31; see, also, Evid.R. 104. A reviewing court will not disturb a trial court's evidentiary ruling absent an abuse of discretion, which occurs only when the trial court has acted unreasonably, arbitrarily, or unconscionably. Nielsen v. Meeker (1996), 112 Ohio App.3d 448,450 (citing Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219).
The trial court did not abuse its discretion here. For appellant to be convicted under the Marietta disorderly conduct ordinance, the prosecution was required to prove that the appellant recklessly caused inconvenience, annoyance, or alarm by creating a condition physically offensive to persons through an act serving no lawful purpose. The "act" in question was the appellant spitting in Cassady's face. Whether Cassady, in fact, spit on Ms. Whitehair on a prior occasion does not help to determine any element of appellant's disorderly conduct offense. The only relevant inquiry is the effect of appellant's action upon Cassady or any other person affected by the appellant's spitting at the time it occurred.
Appellant implies that Cassady's prior act is probative of Cassady's belief that spitting on someone is not physically offensive or should not cause inconvenience, annoyance, or alarm. This contention is tenuous at best. Assuming Cassady spit on Doris Whitehair, it is more reasonable to assume that he did so because it was offensive. Further, the Whitehair incident purportedly involved Cassady as the spitter rather than the person spit upon. Thus, while Whitehair's perception of that incident might have been relevant, Cassady's was not. The trial court did not abuse its discretion in this regard. Appellant's third assignment of error is overruled.
 IV.
Appellant's fourth assignment of error argues that the trial court twice admitted inadmissible "hearsay upon hearsay" during Officer Woods's testimony for the prosecution. The first objection took place after the following exchange:
 Q. [by Prosecutor] * * * What did you initially observe as you arrived at [MSI]?
 A. I came eastbound on Lancaster Street off of Fort Harmar Drive, and I got down to right in front of the plant, and I saw several strikers in the street, also on the south curb. I pulled up and stopped. Mr. Statkiewicz asked me if I knew Charles Roberts, and I said no, why, what happened? And he said, he just spit on Bruce Cassady. So I went ahead and parked my vehicle. I went up and started talking to Mr. Statkiewicz. Mr. Roberts was standing very close to us, he stated, you ought to be glad I didn't jump the fence and kick his ass.
Appellant's counsel objected to this testimony, arguing that it was "hearsay upon hearsay." Prior to Office Woods's testimony, Mr. Statkiewicz testified that he did not personally observe appellant spit at Cassady. He learned of the incident from a third party. The trial court agreed that the testimony could be hearsay but added, "* * * it's also offered to show what the officer did next. I don't think it's offered for the truth of the matter asserted. I'm not considering it in that fashion anyway."
Moments later, appellant's counsel raised the identical objection to further testimony from Officer Woods:
 Q. * * * Now, again, when you first arrived at the incident, you say — how far away from you was Mr. Roberts?
A. Oh, within ten feet.
 Q. Okay. And what did he say if anything at that time?
 A. Mr. Statkiewicz had told me that Mr. Roberts had spit at Bruce Cassady * * *
MR. COGAN: Same objection, your Honor.
THE COURT: Sustained.
Following the sustained objection, Woods testified to what appellant said following Woods's arrival and did not offer further testimony about what Statkiewicz had told him.
Any out-of-court statement offered to prove the truth of the matter asserted therein is hearsay and may be excluded at trial. Evid.R. 801(C). Further, hearsay included within another hearsay statement is also excluded "unless each part of the combined statements conforms with an exception to the hearsay rule * * *." Evid.R. 805. Among the hearsay exceptions is the maxim that statements offered for some purpose other than proof of the matters asserted are not hearsay. State v. Maurer
(1984), 15 Ohio St.3d 239, 262-63. Thus, an out-of-court statement offered to show why a witness acted in a particular manner is not hearsay. Id. See, also, State v. Messer (1995),107 Ohio App.3d 51, 57. A trial court has broad discretion to determine whether a declaration should be admissible under the various exceptions to the hearsay rule. State v. Rohdes (1986),23 Ohio St.3d 225, 229, disapproved on other grounds by Statev. Kidder (1987), 32 Ohio St.3d 279.
In this case, the initial statement objected to by appellant was not "double hearsay." The record shows that, at the time appellant's counsel objected, Officer Woods was explaining generally the events upon his arrival. His recollection of what Statkiewicz told him came in the context of describing the incident and his actions when he arrived. Each layer of purported hearsay, i.e., the statement by Statkiewicz to Woods and the statement to Statkiewicz by a third person, helps explain officer Woods's actions in the particular situation that confronted him. The trial court did not abuse its discretion in allowing the testimony for this limited purpose. Moreover, the trial court, which was the trier of fact, expressly declared that it would not use the statement for the truth of the matters asserted.
Even if Officer Woods' testimony was inadmissible hearsay, we find its admission by the trial court to be harmless beyond a reasonable doubt. The truth of the matter asserted in the challenged testimony was that appellant spit on Cassady. Several witnesses testified to this fact, including appellant, who admitted spitting on Cassady. Thus, the matter asserted in Officer Woods' testimony is not even in dispute. With a multitude of testimony establishing that appellant spit on Cassady, coupled with the trial court expressly declaring that it did not consider the purported hearsay for the truth of the matter asserted, there is no reasonable probability that any inadmissible testimony from Officer Woods contributed to appellant's conviction. Thus, the challenged testimony cannot form a basis for reversing appellant's conviction. SeeState v. Brown (1992), 65 Ohio St.3d 483, 485.
We also discard appellant's arguments concerning the second disputed statement, but for simpler reasons. The record clearly indicates that the trial court sustained appellant's objection to Officer Woods's reprise of testimony concerning what Statkiewicz told him. Following the sustained objection, Officer Woods proceeded with his testimony, which included none of the statements objected to by appellant. There was no hearsay testimony, rendering appellant's arguments concerning the second statement frivolous. We overrule appellant's fourth assignment of error.
 V.
The appellant's sixth assignment of error argues that the cumulative effect of trial court errors may merit reversal, even if no single error constitutes reversible error. However, before we consider whether "cumulative error" is present, we must find that the trial court committed multiple errors.State v. Goff (1998), 82 Ohio St.3d 123, 140. We have found no errors in this case, harmless or otherwise. The "cumulative error" principle is inapplicable.
Having overruled each of the appellant's assignments of error, we affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Kline, P.J. and Abele, J.: Concur in Judgment and opinion.
For the Court
 BY: _________________________ William H. Harsha, Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.
[1] The language in Section 509.03(a) of the Marietta Code is identical to Ohio's disorderly conduct statute, R.C.2917.11(A).
[2] Appellant cites State v. Bailey (1992), 83 Ohio App.3d 544 for the proposition that spitting on another person is not an assault. Thus, appellant argues that he used no force against Cassady. Appellant broadens Bailey beyond its meaning. The Second District reversed a conviction for assault because there was no evidence to show that the defendant's spitting caused physical harm to the victims. Bailey does not stand for the proposition that spitting is not physically offensive or incapable of causing inconvenience, annoyance or alarm to another.