THE STATE OF OHIO, APPELLEE, *v.*
FLYNT ET AL., APPELLANTS.

[Cite as State v. Flynt (1980), 63 Ohio St. 2d 132.]

(No. 79-556—Decided July 16, 1980.)

*Ms. Almeta Johnson,* chief police prosecutor, and *Mr. Bruce A. Taylor,* for appellee.

*Messrs. Berkman, Gordon, Kancelbaum, Levy & Murray, Mr. Bernard A. Berkman, Mr. George W. Palda, Mr. Herald Price Fahringer* and *Mr. Paul J. Cambria, Jr.,* for appellants.

*Per Curiam.* The law is well settled that the government is subject to constitutional restraints in its choice of those whom it may prosecute. As long ago as *Yick Wo* v. *Hopkins* (1886), 118 U.S. 356, 373-74, the United States Supreme Court stated that although a "law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights," there is a denial of equal protection of the laws.

The conscious exercise of some selectivity in enforcement is not in itself, however, a violation of the United States Constitution. *Oyler* v. *Boles* (1962), 368 U.S. 448, 456. In order for selective enforcement to reach the level of unconstitutional discrimination the discrimination must be "intentional or purposeful." *Snowden* v. *Hughes* (1944), 321 U.S. 1, 8. This concept of "intentional or purposeful discrimination" was explained in *United States* v. *Berrios* (C.A. 2, 1974), 501 F. 2d 1207, 1211, as follows:

"To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least *prima facie,* (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, *i.e.,* based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. These two essential elements are sometimes referred to as 'intentional and purposeful discrimination.' " This test has been recognized by numerous courts. See *United States* v. *Murdock* (C.A. 5, 1977), 548 F. 2d 599, 600; *United States* v. *Ojala* (C.A. 8, 1976), 544 F. 2d 940, 943; *United States* v. *Legget & Platt, Inc.* (C.A. 6,

1976), 542 F. 2d 655, 658, certiorari denied, 430 U.S. 945 (1977); *United States* v. *Bourque* (C.A. 1, 1976), 541 F. 2d 290, 292-293; *United States* v. *Peskin* (C.A. 7, 1975), 527 F. 2d 71, 86, certiorari denied, 429 U.S. 818 (1976); *United States* v. *Scott* (C.A. 9, 1975), 521 F. 2d 1188, 1195, certiorari denied, 424 U.S. 955 (1976).

Applying these principles to the instant cause it must be conceded that defendants demonstrated that other magazines with a format similar to Hustler, sold in the same stores as that magazine, were not yet being prosecuted, although the authorities were aware of their existence and general content. There are, however, several legitimate reasons testified to at trial as to why Hustler magazine was chosen as a test case.[1] The prosecutor, for example, testified that while it contained a similar format as other magazines on the market, that some portions of Hustler were more offensive than those in the compared magazines. It was also testified that the prosecution of out-of-state magazines would entail greater difficulties in service of process and extradition. The officers of Hustler, on the other hand, were domiciled in Ohio.

In addition, the defendants did not establish that Hustler alone would be prosecuted. The prosecutor in this cause stated that he did not have the authority to make the decision concerning subsequent prosecutions of other magazines. Testimony from his superiors was necessary to infer that the city of Cleveland would not follow up a successful result in the instant cause with the bringing of additional prosecutions.

The burden on a defendant to show intentional or purposeful discrimination is a heavy one, *Berrios, supra,* and will not be presumed, *Snowden, supra.* We hold that the defen-

---

[1] The validity of pursuing a test case and its relationship to the doctrine of discriminatory prosecution was explored in the case of *People* v. *Utica Daw's Drug Co.* (1962), 16 A. D. 2d 12, 225 N.Y. Supp. 2d 128, 136, where it was stated:

"Selective enforcement may be justified when the meaning or constitutionality of the law is in doubt and a test case is needed to clarify the law or to establish its validity. Selective enforcement may also be justified when a striking example or a few examples are sought in order to deter other violators, as part of a bona fide rational pattern of general enforcement, in the expectation that general compliance will follow and that further prosecutions will be unnecessary. It is only when the selective enforcement is designed to discriminate against the persons prosecuted, without any intention to follow it up by general enforcement against others, that a constitutional violation may be found."

dants herein did not sustain their burden of establishing a *prima facie* case of unconstitutional discriminatory prosecution. In order to sustain their burden, the defendants needed to present testimony from those individuals responsible for deciding the intended course of future prosecutions.

Accordingly, the judgment of the Court of Appeals is affirmed.[2]

*Judgment affirmed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.

PAUL W. BROWN, J., dissenting. I agree with the test used by the majority and I also agree that there is a heavy burden upon the defendants to demonstrate intentional or purposeful discrimination. I would hold, however, that the defendants sustained this burden and that the Court of Appeals and this court wrongfully substituted their own version of the facts for that of the trier of fact in the instant cause.

It is well-settled that in reviewing a decision rendered by a trial court without a jury, a Court of Appeals will indulge in every reasonable presumption in favor of findings made by the court below as a basis for its decision. *Beach* v. *Sweeney* (1958), 167 Ohio St. 477. Any fact necessary to sustain the judgment, including reasonable inferences drawn therefrom, must be presumed to have been found by the trial court if evidence was presented in support of such finding. See *Brescoll* v. *Nationwide Mut. Ins. Co.* (1961), 116 Ohio App. 537, 543; *Thayer* v. *Shorey* (1934), 287 Mass. 76, 191 N.E. 435. The appellate courts in the instant cause have deviated from this principle.

Applying the test used by the majority, governing discriminatory prosecutions, quoted from *United States* v. *Berrios* (C.A. 2, 1974), 501 F. 2d 1207, 1211, it is apparent that the first prong of that test is met. The defendants presented evidence, the witness Taylor conceded, and the trial court found,[3] that the city of Cleveland had never before prosecuted

---

[2] Implicit in this court's holding is a rejection of defendants' contention that the Court of Appeals reversed the trial court's dismissal of the complaints in the instant cause, based upon an improper determination of the credibility of the witnesses at trial.

[3] There are no findings of fact or conclusions of law in the record. There is,

a magazine like Hustler, despite the fact that magazines similar to or pictorially "stronger" than Hustler were available within the community. Although Taylor justified this as a test case, there was substantial evidence indicating the contrary. Lengthy investigations of similar magazines were dropped without taking even preliminary steps toward prosecution. Taylor's attempted justification, *i.e.*, that he was awaiting the outcome of this case, was contradicted by his subsequent testimony concerning the likelihood of general enforcement in the future if he received a favorable judgment in the case. When asked whether he would then pursue other magazines of this type, Taylor testified that the decision was subject to approval from his superiors—this, despite the fact that by his own admission, Taylor possessed the exclusive delegated authority to select which cases to prosecute and he alone had made the decision to pursue Hustler. Furthermore, the evidence strongly indicated that this prosecution was initiated, not to clarify the status of obscenity laws, but rather in response to public reaction to political cartoons.

In light of the trial court's express rejection of the test case rationale, the majority, by selectively adopting testimony supportive of finding this prosecution to be a test case and rejecting evidence to the contrary, improperly impinged on the trial court's prerogative as trier of fact to weigh the evidence and evaluate the credibility of the witnesses. A prosecutor should not be allowed to merely raise the claim that a particular prosecution is a test case, where the evidence clearly demonstrates that to the contrary a discriminatory intent is present.

As to the second prong of the *Berrios* test, *i.e.*, that the discriminatory selection is invidious or in bad faith if based upon impermissible considerations, substantial evidence was presented to establish that the prosecution was initiated (1) on the basis of public sentiment and (2) for the purpose of inhibiting First Amendment rights. Either motivation, standing alone, would be a sufficient basis for a finding of invidious selection or bad faith.

however, a document entitled "Memorandum to Attorneys," authorized by the trial judge, indicating some of the factual considerations supporting his decision. Any reference to the trial court's "findings" are derived from this document.

Taylor explained that he would need to consult his superiors concerning future prosecutions of magazines similar to Hustler because of publicity surrounding obscenity prosecutions. Taylor stated that public reaction was a legitimate consideration in obscenity cases because strong public interest impeded the speedy disposition of these cases and because public response was a barometer of the community's perception of obscenity. The trial court properly took exception to these proffered justifications as a basis for selecting cases to prosecute. The judge noted that the progress of a trial is not a function of attendant publicity, nor should public reaction be used as an index to the community's ideas as to what constitutes obscenity; such a determination being within the domain of a jury. A reasonable inference to be drawn from this testimony, and one which the trial court apparently drew,[4] is that the defendants were prosecuted on the basis of unfavorable public sentiment. Upon this evidence the trial court could reasonably have found that this prosecution was initiated in "bad faith," *i.e.,* that it was grounded upon an arbitrary standard to pursue only those whom the public held in disfavor. As the court noted in *United States* v. *Torquato* (C.A. 3, 1979), 602 F. 2d 564, 568:

"* * *To permit criminal prosecutions to be initiated on the basis of arbitrary or irrational factors would be to transform the prosecutorial function from one protecting the public interest through impartial enforcement of the rule of law to one permitting the exercise of prosecutorial power based on personal or political bias." It is our obligation to prevent such personal abuses of governmental power.

There are also indications that the prosecution was brought to chill the defendants' First Amendment rights. There was strong evidence that the prosecution was intiated on the basis of the political cartoon depicting sexual activity between political figures and the Statue of Liberty (as well as the cartoon displaying Uncle Sam with his pants down). This was admitted during the course of a television interview and at

---

[4] The court asked witness Taylor:

"Mr. Taylor, are you sitting here telling this court that if someone makes a determination that there is a violation of the criminal section of the statute, or the city of Cleveland, that you first determine what the public feels about it before you proceed* * *?"

the hearing, although Taylor subsequently attempted to retract and qualify these statements. Taylor conceded that the cartoon was "the most protected thing in the whole magazine." He could hardly argue otherwise, in light of *Papish* v. *Univ. of Missouri Curators* (1973), 410 U.S. 667, wherein the United States Supreme Court held that a cartoon depicting policemen raping the Statue of Liberty and the Goddess of Justice was not constitutionally obscene. This testimony alone served as an independent basis for the trial court to find bad faith through the inhibition of First Amendment rights.

I conclude that having made a proper showing of discriminatory prosecution, the defendants are entitled to discharge. Such a determination in no way reflects upon the guilt or innocence of the defendants.[5] If, and when, the public authorities decided to undertake a generalized enforcement of the law, the defendants could again be charged.

---

[5] "The question is * * * whether in a community in which there is general disregard of a particular law with the acquiescence of the public authorities, the authorities should be allowed sporadically to select a single defendant or a single class of defendants for prosecution because of personal animosity or some other illegitimate reason. The wrong sought to be prevented is a wrong by the public authorities. To allow such arbitrary and discriminatory enforcement of a generally disregarded law is to place in the hands of the police and the prosecutor a power of the type frequently invoked in countries ruled by a dictator but wholly out of harmony with the principle of equal justice under law prevailing in democratic societies. The court is asked to stop the prosecution at the threshold, not because the defendant is innocent but because the public authorities are guilty of a wrong in engaging in a course of conduct designed to discriminate unconstitutionally against the defendant." *People* v. *Utica Daw's Drug Co.* (1962), 16 A.D. 2d 12, 21, 225 N.Y. Supp. 2d 128, 133.