ZAGERIS, Appellant;

Zageris, Appellee,

v.

CITY OF WHITEHALL et al., Appellees.

[Cite as *Zageris v. Whitehall* (1991), 72 Ohio App.3d 178.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–958.

Decided Jan. 15, 1991.

*Dennis J. Fennessey,* for appellant.

*Matan & Smith* and *Steven L. Smith,* for appellees.

WINKLER, Judge.

On January 26, 1988, Arturs Zageris, plaintiff-appellant (and his mother Alise Zageris), filed suit for a declaratory judgment, a petition for habeas corpus, civil rights claims pursuant to Sections 1983 and 1985, Title 42, U.S.Code, along with a number of tort claims, in the Franklin County Court of Common Pleas, based upon the enactment and subsequent actions taken by the city of Whitehall and its officials to enforce Whitehall Codified Ordinances Section 505.13. On January 27, 1988, the trial court denied the petition for a writ of habeas corpus; this denial is not an issue in this appeal. Defendants-appellees filed a motion for summary judgment as to all issues on March 14, 1989. The trial court, based upon the pleadings, affidavits, depositions and arguments presented, sustained appellees' motion as to every claim except those of slander and intentional infliction of emotional distress. The parties then filed a "Stipulation for Voluntary Dismissal," dismissing the slander and intentional infliction of emotional distress claims without prejudice. Appellant has now filed the instant appeal asserting the following assignments of error:

"First Assignment of Error

"The trial court committed reversible error when it eschewed the mandate of Civil Rule 56 to grant summary judgment.

"Second Assignment of Error

"The trial court erred in determining that Section 505.13 of the Codified Ordinances of Whitehall is not a zoning measure."

Appellant, Arturs Zageris, was the owner of a single-family dwelling located within Whitehall at 1058 Erickson Drive. Alise Zageris, the mother of Arturs and his brother Janis, lived with the appellant. In 1978, Alise and Janis acquired two Siberian Husky dogs which were kept at the Erickson Drive residence. The two dogs had pups in 1981, increasing the number of dogs on the property to nine. In 1983, continuous complaints from the surrounding neighbors resulted in appellant's conviction, pursuant to the "Howling Dogs" ordinance, Whitehall Codified Ordinances Section 505.03(a). Appellant received a fine of $250 and costs and the dogs were ordered removed. This court in *Whitehall v. Zageris* (Apr. 25, 1985), Franklin App. No. 83AP–805, unreported, 1985 WL 10262, affirmed the conviction, fine and costs, but reversed the trial court's order to remove the dogs. The citizen complaints concerning Alise Zageris' dogs continued. The complaints were a contributing factor in the creation of Section 505.13, "Maximum Number of Dogs," in 1984. Whitehall adopted Ordinance No. 47–84 as amended, on June 5, 1984, which enacted Whitehall Codified Ordinances Section 505.13. Section 505.13 reads as follows:

"Maximum number of dogs permitted.

"(a) No person shall keep or harbor more than three dogs, excluding puppies less than four months old, in any single family dwelling, or in any separate suite in a two-family dwelling or apartment dwelling, within this City. The terms 'dwelling' and 'suite', as used in this section, include the parcel of land upon which the building containing the dwelling or suite is located, and also all out-buildings located on that parcel of land.

"(b) Whoever violates this section is guilty of a misdemeanor of the fourth degree.    * * * "

Following the enactment of Section 505.13, the appellant failed to comply with the law, and citations for violation of its provisions were threatened by the appellees. Citations were finally issued on August 12 and 15, 1987. On August 27, 1987, appellant was hospitalized for emergency surgery. Alise Zageris was placed in the custody of the Whitehall police on September 4, 1987, to serve a previously imposed jail sentence stemming from the keeping of the same dogs. On September 6, 1987, while appellant was in the hospital and his mother in custody, the appellees went to appellant's property, entered and removed all nine dogs. The dogs were taken into the care of Whitehall and, later, transferred to the authorities of Franklin County, Ohio. In October 1987, appellant's motion reclaimed one of the dogs, but it was not

until late December 1987, that all the dogs were reclaimed. Appellant's noncompliance continued and in January 1988, Zageris was arrested and prosecuted pursuant to Section 505.13 for keeping and/or harboring his mother's nine dogs.

In his first assignment of error, appellant contends that the trial court failed to follow the mandates of Civ.R. 56 when it granted summary judgment in favor of the appellees. Civ.R. 56(C) reads in pertinent part as follows:

" * * * Summary judgment shall be rendered forthwith if the pleading, depositions * * * [and] affidavits * * * show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence * * * construed most strongly in his favor. * * * "

Before a court may grant a motion for summary judgment, a movant must satisfy the following test: (1) that there is no genuine issue of fact to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 273–274; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. In reviewing a motion for summary judgment, any inferences to be drawn from the underlying facts shall be viewed in the light most favorable to. the opposing party. *Fryberger v. Lake Cable Recreation Assn., Inc.* (1988), 40 Ohio St.3d 349, 350, 533 N.E.2d 738, 739–740.

Appellant first contends that the affidavit of Joseph T. Zwayer, submitted in support of appellees' motion, failed to meet the test set forth in *Olverson v. Butler* (1975), 45 Ohio App.2d 9, 74 O.O.2d 11, 340 N.E.2d 436, and Evid.R. 701. It is argued that Zwayer's affidavit contains matters not within his personal knowledge. This argument lacks merit. The statements contained in the affidavit represent either actions taken by Zwayer himself or facts and circumstances of which a city attorney would have personal knowledge under the circumstances. The affidavit avers matters that would be admissible in evidence and about which the witness is competent to testify pursuant to Civ.R. 56(E). We also note that any error which may have existed when the

affidavit was filed was rendered harmless by the filing of a number of depositions prior to the decision rendered by the trial court.

■ Appellant argues that the seizure of the dogs went beyond the authority granted the trial court by the statute. The penal authority of the ordinance provided for only a fine and/or incarceration, not abatement or outright seizure. Appellees justify the seizure of the dogs upon R.C. 1717.13, which reads in pertinent part:

"When, in order to protect any animal from neglect, it is necessary to take possession of it, any person may do so. When an animal is * * * confined, and continues without necessary food, water, or proper attention for more than fifteen successive hours, any person may, as often as is necessary, enter any place in which the animal is * * * confined and supply it with necessary food, water, and attention, so long as it remains there, or, if necessary, or convenient, he may remove such animal; and he shall not be liable to an action for such entry. * * *"

This statute expressly requires a showing of neglect prior to a lawful entry and seizure. As to whether this requirement was met, the evidence submitted to the court is at odds. Appellees offered Joseph Zwayer's affidavit in which he testified that the dogs were removed for humane reasons because no one was occupying the property to care for the dogs. There was also deposition testimony relating to the poor state of cleanliness and upkeep of the dogs at the time of the seizure on September 6, 1987. (See Saffle depo. at 70, 80; Bishop depo. at 5.) Appellant, by way of affidavit and deposition testimony, contends that his brother, Janis, had come into town on September 5, 1987 (from Chicago) to tend to the dogs; that on the same day he arrived, Janis purchased dog food and fed and watered the dogs. (See affidavit of Janis Zageris and Zageris depo. at 97–98, 103–104.) There is also evidence that appellant's mother had contacted family friends, the Neilands, to care for the dogs while she and the appellant were absent. (See affidavit of Zenta Neilands, and Zageris depo. at 98–99.) The testimony and affidavits, and all reasonable inferences drawn therefrom, when viewed most favorably to the nonmovant, create a genuine issue of fact, to wit: the condition of the dogs at the time of the seizure on September 6, 1987, and, thus, whether or not the seizure of the dogs was lawful. In sum, we find that the trial court erred and that summary judgment on appellant's claims was inappropriately granted, but only in regard to the seizure of the dogs pursuant to R.C. 1717.13.

Accordingly, appellant's first assignment of error is well taken and is sustained.

■ This leads us to appellant's second assignment of error in which he contends the trial court erred in determining that the ordinance in question, Whitehall Codified Ordinances Section 505.13, was a nuisance provision rather than a zoning measure. The ordinance, it is argued, essentially restricts the use of one's land and its operation is contingent upon the existence of a dwelling on the land. He argues further that, if appellees had wanted this to be a nuisance statute, they should have so stated. And finally, the case relied upon by the trial court, *Downing v. Cook* (1982), 69 Ohio St.2d 149, 23 O.O.3d 186, 431 N.E.2d 995, is clearly distinguishable from the circumstances of the present case. In light of the above, appellant argues, the trial court should have declared the subject ordinance to be a zoning measure and appellant's keeping of the dogs constitutes a preexisting nonconforming use.

Appellees argue that the Whitehall City Council, by means of its police power, enacted Section 505.13 as a health and safety statute declaring a particular use of private property a nuisance. The law permits a municipality to declare a preexisting lawful use to be an unlawful nuisance. Once this occurs, the use is unlawful and one may not continue the use under guise of a nonconforming use. Since the enactment of Section 505.13, the appellant and his mother have continued their use in violation of the ordinance resulting in prosecution under the terms of the ordinance.

■ The foremost object of judicial investigation in the construction of a statute is to ascertain and give effect to the intent of the law-making body which enacted it. *Slingluff v. Weaver* (1902), 66 Ohio St. 621, 64 N.E. 574. The interpretation of a statute starts and ends with the words chosen by the legislative body, but it is not limited to those words alone, because the whole context of the enactment must be considered. *State v. Cravens* (1988), 42 Ohio App.3d 69, 72, 536 N.E.2d 686, 689. The process of interpretation requires: (1) a decision about the purpose to be attributed to the statutes; and (2) a decision about the meaning of the legislative body and words that will carry out that purpose. *Id.* After a review of the language of the ordinance, the preamble, the title, and the relevant circumstances surrounding this enactment, it is obvious as the trial court noted, that the Whitehall City Council's purpose in enacting Section 505.13 was to proscribe the keeping or harboring of more than three dogs *as a nuisance.* The preamble contains the language, conditions, and concerns traditionally connected with and characterized as nuisances. Enactment of the ordinance was the vehicle by which city council carried out its purpose to cure or prevent the conditions declared to be a nuisance. Section 505.13 served as an amendment to the provisions contained in Whitehall Codified Ordinances Section 505, including the nuisance provision, to further the council's purposes. The absence of a clear declara-

tion in the ordinance that it is a nuisance proscription is not, contrary to appellant's claim, dispositive of the issue. See, *e.g.*, *Stow v. Griggy* (1983), 6 Ohio App.3d 65, 6 OBR 504, 453 N.E.2d 1125, which held an ordinance to declare a nuisance even though no specific declaration to that affect appeared in the ordinance. The absence of an express declaration is only evidence to be considered. Obviously, if an unambiguous declaration does exist, the court must refrain from applying its own interpretation which would vary from the plain language of the statute. See *Slingluff, supra.* In this case, the trial court correctly determined that Section 505.13 was a nuisance declaration and not a zoning measure.

A legislative body may enact legislation declaring that previously lawful activity will thereafter be deemed a nuisance. Such legislation will be upheld against constitutional challenge if it comes within the police power of the municipality. *Downing, supra*, 69 Ohio St.2d at 150, 23 O.O.3d at 186–187, 431 N.E.2d at 996–997; *Ghaster Properties, Inc. v. Preston* (1964), 176 Ohio St. 425, 27 O.O.2d 388, 200 N.E.2d 328. Once the use of private property has been declared a nuisance by legislative enactment, it is then an unlawful use and the doctrine of nonconforming use cannot be applied. *Stow, supra.* The question becomes: Was the enactment of Section 505.13 a valid exercise of Whitehall's police power? We find, even though somewhat factually distinguishable, *Downing, supra*, and its general principles apply. An enactment such as Section 505.13 falls within the police powers of a legislative body if it has a real and substantial relation to the public health, safety, morals or general welfare of the public and is neither unreasonable nor arbitrary. *Id.; Ghaster, supra; West Jefferson v. Robinson* (1965), 1 Ohio St.2d 113, 119–120, 30 O.O.2d 474, 477–478, 205 N.E.2d 382, 387–388. As stated in *Downing*, the regulation of dogs falls within the legitimate range of police power. The present ordinance represents a legislative determination that more than three grown dogs in any single-family dwelling unit or in any separate suite in a two-family or apartment dwelling is a detriment to the general welfare of the public. " * * * It cannot be disputed that too many dogs in too small a space may produce noise, odor and other conditions adverse to the best interests of the community as a whole." *Downing, supra*, 69 Ohio St.2d at 151, 23 O.O.3d at 187, 431 N.E.2d at 997. The ordinance presently in dispute does bear a real and substantial relation to the general welfare of the community.

In order to overcome the presumption of validity that the Whitehall ordinance enjoys, and in order to prove that it is unreasonable and arbitrary, the contesting party must demonstrate a clear and palpable abuse of the legislating body's police power. *Id.; State v. Renalist, Inc.* (1978), 56 Ohio St.2d 276, 278, 10 O.O.3d 408, 409, 383 N.E.2d 892, 894. When dealing with

municipal ordinances, the municipalities are presumed to be familiar with local conditions and know the needs of the community and, therefore, a court will not substitute its judgment for legislative discretion absent a clear and palpable abuse of power. *Wilson v. Cincinnati* (1976), 46 Ohio St.2d 138, 142, 75 O.O.2d 190, 193, 346 N.E.2d 666, 669. Appellant has failed to demonstrate that Section 505.13 is not reasonably adapted to the legitimate purpose of avoiding the problems associated with a concentration of dogs in a dwelling unit or multiple dwelling units in a municipality which is primarily residential in character. The trial court did not err in finding Section 505.13 to be a declaration of nuisance by legislative enactment and a valid exercise of Whitehall's police power.

As such, any violation of Section 505.13 on the part of appellant, as the harborer or keeper of the dogs, could be enforced by appellees in any manner provided by the ordinance. The court properly granted summary judgment as to claims arising from actions taken pursuant to Whitehall Codified Ordinances Section 505.13.

Additionally, appellant contends that the appellees' prosecution of this matter amounted to an intentionally discriminatory selective enforcement. It is contended that appellant, as a mere landowner and not owner of the dogs, was the only landowner to have been prosecuted under Section 505.13. All other citations issued were received by the owners of the dogs. Appellees argue that other persons were issued citations for violation of Section 505.13 but had corrected their use to conform to the statute. In sum, appellees argue the frequency of prosecution was merely a function of continuous violation of the ordinance.

The conscious exercise of some selectivity in enforcement is not, in itself, a violation of the United States Constitution. *State v. Flynt* (1980), 63 Ohio St.2d 132, 17 O.O.3d 81, 407 N.E.2d 15. In order for selective enforcement to reach the level of unconstitutional discrimination, the discriminations must be "intentional or purposeful." *Id.* To prove selective prosecution, a claimant bears the heavy burden of establishing, at least prima facie: (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, *i.e.*, based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. *Id.* The burden on a person claiming selective enforcement to show intentional or purposeful discrimination is a heavy one, and will not be presumed. *Id.* at 135, 17 O.O.3d at 82–83, 407 N.E.2d at 17–18.

We find that appellant has failed to meet this heavy burden. Appellant has failed to show an example of a landowner, not the owner of any of the dogs, who harbored or kept more than three adult dogs and was not cited. There is evidence that other owners of more than three dogs were cited for violating Section 505.13. Additionally, there was no showing that enforcement of the ordinance was undertaken in bad faith and with the intent and purpose to discriminate. The appellees may well have consciously and selectively enforced Section 505.13 against appellant, but this was the result of a continuous and blatant violation of the ordinance. The enforcement by Whitehall and its officials did not rise to a violation of the United States Constitution. The trial court properly granted summary judgment as to appellant's claim of selective enforcement.

Based upon the foregoing, appellant's second assignment of error is not well taken and is overruled. Appellant's first assignment of error is well taken and is sustained and, on that basis, the judgment of the Franklin County Court of Common Pleas is hereby reversed and this issue is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part, and remanded.*

WHITESIDE and McCORMAC, JJ., concur.

RALPH WINKLER, J., of the Hamilton County Court of Common Pleas, sitting by assignment.