OPINION
In these consolidated cases, Todd and John Schlosser appeal from the denial of their petitions for post-conviction relief. Previously, both men were convicted of failing to register as a credit services corporation; charging an advance fee for credit services; and engaging in fraudulent acts in the sale of credit services [violations of R.C. 4712.02(J)(1), R.C. 4712.07(A), and R.C. 4712.07(L), respectively]. Additionally, John Schlosser was convicted of violating R.C. 2923.32(A)(1) [the Ohio Racketeer Influenced and Corrupt Organizations (RICO) statute] by engaging in a pattern of corrupt activity. We affirmed the convictions InState v. Schlosser (May 24, 1996), Montgomery App. Nos. 14976 and 14968, unreported, except for the RICO conviction, which we reversed. The reversal was based on the trial court's error in instructing the jury that R.C. 2923.32(A)(1) was a strict liability offense. Subsequently, on August 6, 1997, the Ohio Supreme Court reversed our decision on the RICO charge. See,State v. Schlosser (1997), 79 Ohio St.3d 329. Specifically, the court held that RICO indicates a purpose to impose strict liability.
While their cases were on appeal, both Schlossers filed petitions for post-conviction relief with the trial court. However, they then filed motions to withdraw the petitions without prejudice, and these motions were granted by the trial court on October 28, 1996. Subsequently, both petitions were refiled on November 6, 1997. The State responded with motions to dismiss the petitions as untimely and with motions for summary judgment on the merits. In its decision, the trial court agreed with the State that the petitions were untimely, but went on to consider the merits of the petitions anyway. On the merits, the court found that all claims except one were barred by res judicata. The claim which was not barred was based on trial counsel's failure to call witnesses. Nonetheless, the trial court rejected this claim, because the court felt the evidence was insufficient to meet the standards for showing ineffective assistance of counsel.
On appeal, the Schlossers raise identical assignments of error, as follows:
 I. The Court of Common Pleas erred in determining that many of the Appellant's claims were barred by res judicata.
 II. The Appellants were entitled to relief based upon ineffective assistance of counsel during pre-trial investigation.
 III. The statutes and subsequent indictments are unconstitutionally vague.
 IV. The Appellants' motions pursuant to R.C. 2953.21
were improperly denied without an evidentiary hearing.
After reviewing the record, we affirm the judgment of the trial court. Specifically, the petitions were not timely filed and the trial court was precluded from considering the merits of the petitions. On the other hand, although we agree with the trial court's decision as to untimeliness, the record in this case is troublesome. As a result, we will comment on the remaining issues raised in the appeal.
 I
As we mentioned above, the trial court found that most of the claims in the post-conviction petition were barred by resjudicata. The claims in question are: 1) that the convictions are void because the trial court lacked jurisdiction; 2) that the Schlossers were selectively prosecuted; and 3) that trial counsel was ineffective in failing to move for severance of charges against Todd Schlosser.
Concerning the jurisdictional issue, the Schlossers contend the trial court erred in applying res judicata because lack of jurisdiction can be raised at any time. This is a correct general statement. In this regard, the Ohio Supreme Court has clearly said that post-conviction relief is not precluded by res judicata
where the claim is that the conviction is void for lack of subject matter jurisdiction. State v. Wilson (1995), 73 Ohio St.3d 40,46, n. 6. Therefore, the Schlossers' failure to raise such a claim on direct appeal would not preclude post-conviction relief.
In the present case, the jurisdictional claim is based on the prosecutor's alleged lack of statutory authority to bring charges without a referral from the consumers affairs division of the Ohio Attorney General's Office. As support for this argument, the Schlossers rely on statutory language in the Ohio Credit Services Organization Act (Credit Services Act), as well as statutory limitations on the authority of prosecutors to bring charges.
The Ohio Credit Services Act is codified in Chapter 4712 of the Ohio Revised Code. Under the Act, credit services organizations must register with the division of financial institutions and must refrain from certain activities like the use of false or misleading representations, deceptive acts, etc. See, R.C. 4712.02 and R.C. 4712.07. Certain remedies are also provided. For example, a buyer may bring an action for recovery of damages. R.C. 4712.10(A)(1). Additionally, the buyer, the division of financial institutions, or the Attorney General may file an action to enjoin violations. R.C. 4712.10(B)(1). And finally, the Act provides that:
 [t]he division may initiate criminal proceedings under sections 4712.01 to 4712.14 of the Revised Code by presenting any evidence of criminal violations to the prosecuting attorney of the county in which the offense may be prosecuted. If the prosecuting attorney does not prosecute the violations, or at the request of the prosecuting attorney, the division shall present any evidence of criminal violations to the attorney general, who may proceed in the prosecution with all the rights, privileges, and powers conferred by law on prosecuting attorneys, including the power to appear before grand juries and to interrogate witnesses before such grand juries. These powers of the attorney general shall be in addition to any other applicable powers of the attorney general.
 (C) The remedies provided by this section are in addition to any other remedy provided by law.
R.C. 4712.10(B)(2) and (C).
The record before us does not indicate whether the division of financial institutions was involved in presenting evidence of criminal violations to the Montgomery County Prosecuting Attorney. However, if the factual statement in the Schlossers' brief is correct, the indictments in the underlying case appear to have resulted from a search and seizure by local law enforcement officials, not from intervention by the division of financial institutions. Assuming this to be the case, we nonetheless find that the trial court had proper subject matter jurisdiction.
First of all, R.C. 4217.10 does not restrict the power of prosecuting attorneys to investigate and prosecute crimes occurring in their jurisdictions. Rather, the statute simply gives the division of financial institutions the ability to initiate prosecution by presenting evidence of violations to a county prosecutor. If the evidence is given to the prosecutor and he or she chooses not to prosecute (or asks that the attorney general be involved), the statute then gives the attorney general the discretion to prosecute. In this latter event, the attorney general's powers are expanded to include powers normally accorded to prosecuting attorneys, like appearance before grand juries, interrogation of witnesses, and so forth. However, the statute does not in any way restrict the traditional power of county prosecuting attorneys.
This traditional power is governed by R.C. 309.08(A), which provides that:
 [t]he prosecuting attorney may inquire into the commission of crimes within the county. The prosecuting attorney shall prosecute, on behalf of the state, all complaints, suits, and controversies in which the state is a party, except for those required to be prosecuted by a special prosecutor pursuant to section 177.03 of the Revised Code or by the attorney general pursuant to section 109.83 of the Revised Code, and other suits, matters, and controversies that the prosecuting attorney is required to prosecute within or outside the county, in the probate court, court of common pleas, and court of appeals.
Based on this broad statute, which is not explicitly referred to in R.C. 4217.10, the county prosecutor may investigate any offenses within the county and must prosecute all complaints in which the state is a party. To the extent that R.C. 4712.10
impliedly affects this section, it simply adds a situation in which another party, i.e., the division of financial institutions, is allowed to initiate prosecution by prompting inquiry into a crime. It also adds another instance where the attorney general is authorized to act, beyond those listed in R.C. 309.08.
As R.C. 309.08 currently reads, all complaints and controversies involving the state must be prosecuted by county prosecuting attorneys, except for certain narrow exceptions (which are not applicable in the present case). Therefore, absent the statutory authorization in R.C. 4217.10, the attorney general could not prosecute violations of the Ohio Credit Services Act. However, because statutory authorization is given, the attorney general can intervene, but only where the division of finance is involved, and only if the prosecuting attorney chooses not to act or asks for help.
This idea that R.C. 4712.10 expands, rather than inhibits prosecutorial power is emphasized by R.C. 4217.10(C), which clearly indicates that the listed remedies are not exclusive, but are supplemental to other remedies provided by law.
Accordingly, based on the preceding discussion, we find that a county prosecuting attorney can prosecute violations of Chapter 4712 though normal prosecutorial avenues like investigation and indictment. R.C. 4712.10 merely provides an alternative means of alerting the county prosecuting attorney to violations, by letting the division of financial institutions present evidence to the prosecutor. Again, if the prosecutor declines to act or does not act, the attorney general can take over. Such a system of alternative investigation is logical, since the division of financial institutions may not even know an organization exists if the organization has failed to comply with registration requirements. In such cases, the county prosecutor may uncover the evidence through local investigation and may obtain indictments under its normal statutory authority. By the same token, the division may obtain information or evidence of which local authorities are unaware.
We also note that common pleas courts have "original jurisdiction over all justiciable matters * * * as may be provided by law." Section 4(B), Article IV of the Ohio Constitution. In the context of crimes, the law provides that common pleas courts have original jurisdiction of "all crimes and offenses, except in cases of minor offenses the exclusive jurisdiction of which is vested in courts inferior to the court of common pleas." R.C.2931.03. R.C. 4712.10 in no way restricts or affects this jurisdiction. Accordingly, even if R.C. 4217.10 somehow restricted the prosecutor, the jurisdiction of the trial court would not have been affected.
In light of the preceding discussion, the trial court did err in stating that jurisdictional claims are precluded by resjudicata. However, summary judgment was still proper because the jurisdictional claim is without merit.
The second issue raised by the Schlossers concerns their selective prosecution claim. Specifically, they contend that this claim could not have been raised on direct appeal because it depends on matters outside the record. As proof of selective prosecution, they point to the fact that electronic research shows no other prosecutions under Chapter 4712 in the State of Ohio. Additionally, they focus on a letter from Thomas Floyd, a licensed mortgage broker who had previously worked in the credit business. In the letter, Floyd says that he received a notice from the State about the new Credit Services Act. The notice stated that Floyd needed to register if he were still in the credit repair business. According to Floyd, many people in the credit repair business were unaware of the new legislation, leading Floyd to believe that not everyone was notified. Floyd also commented that the Ohio Division of Consumer Finance employees were not very familiar with the law when he contacted them. And finally, John Schlosser stated in an affidavit that he was unaware of registration requirements under Chapter 4712, and would have complied with the requirements had he known they existed.
In State v. Flynt (1980), 63 Ohio St.2d 132, the Ohio Supreme Court used the following standard for selective prosecution claims:
 To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, I. e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. These two essential elements are sometimes referred to as `intentional and purposeful discrimination.'
Id. at 134-35 (citations omitted). Selective prosecution is not "a defense on the merits to the criminal charge itself, but [is] an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." State v. Getsy
(1998), 84 Ohio St.3d 180, 203. However, although the claim is independent and involves facts that might not be elicited during a criminal trial, that does not mean the claim cannot be raised during the criminal trial process and on direct appeal.
As an example, in Flynt, the defendants filed a motion to dismiss the criminal charges and the evidence relating to selective prosecution was set out in a hearing on the motion. The trial court granted the motion to dismiss and the case eventually ended up in the Ohio Supreme Court, where the dismissal was reversed. Likewise, in Getsy, the defendant filed a motion in the trial court to dismiss capital specifications because of selective enforcement. The issue was then resolved as part of the trial and appeal process. 84 Ohio St.3d at 203. Accordingly, because the Schlossers could have raised the issue of selective enforcement under Chapter 4712 during the trial process and on direct appeal, the trial court correctly applied res judicata to that claim.
In this context, we note that the Schlossers have cited our prior decision in State v. Singerman (1996), 115 Ohio App.3d 273, for the proposition that claims of prosecutorial misconduct are cognizable in post-conviction relief actions. However, Singerman
is distinguishable, because the allegation in that case was that the State had hidden or destroyed evidence which would have proven an entrapment defense. Unlike selective enforcement in charging a defendant with the crime itself, the fact that the prosecution destroyed evidence would probably not be discovered during trial. However, if the facts supporting the claim were discovered before or during trial, but were not raised until the post-conviction proceeding, res judicata would apply.
While we did not explicitly comment on this point inSingerman, we did cite State v. Walden (1984) 19 Ohio App.3d 141, as support for our holding that prosecutorial misconduct may be raised in a post-conviction relief petition. A review of Walden
shows that the defendant in that case was only allowed to raise the issue because she alleged in a verified petition that she did not, and could not have known of the prosecutorial misconduct at the time of trial. Id. at 146. Additionally, she also presented evidence that the State had not disclosed potentially helpful evidence. And, finally, the State failed to present any evidence rebutting these facts. As a result, the court of appeals found that summary judgment was improper and remanded the matter for an evidentiary hearing.
As a result of the foregoing, implicit in Singerman and explicit in Walden is the principle that if a defendant discovers evidence of misconduct or has reason to know of such misconduct during trial, the issue must be raised during that process, including direct appeal, or it is barred by res judicata. Applying this principle to the present case, we conclude that all the information needed by defendants was available to them before or during trial. For example, electronic research done at that time would have shown the lack of prosecutions under Chapter 4712. Moreover, unlike the defendant in Walden, the Schlossers do not claim to have been unaware during trial that other individuals received notice of the need to register. In fact, the Floyd letter (which, incidentally, is not in the form of a proper affidavit), indicates the reverse. According to Floyd, he visited the Schlossers while they were on house arrest and informed them of his experience with the new Credit Services Act.
Accordingly, because the selective prosecution argument could have been raised during trial, it is barred by res judicata. We also stress that we are unimpressed by the alleged lack of prosecutions, since the absence of reported or unreported cases under Chapter 4712 simply means that no cases were appealed; it does not mean that no other prosecutions occurred.
The third and final issue raised in connection with the first assignment of error is that the trial court erred in applying resjudicata to a trial severance issue. In this regard, Todd Schlosser claims his trial counsel was ineffective in failing to ask for a separate trial of Todd's case. The State's response is that the severance issue could have been litigated on direct appeal.
To the extent that an ineffective assistance claim is based on matters outside the record, it may be raised in a post-conviction proceeding. By the same token, if the claim is based on the record made at trial, it must be raised on direct appeal. See, State v. Smith (June 20, 1996), Franklin App. No. 96APA02-249, unreported, p. 2. Furthermore, the Ohio Supreme Court has said that:
 [w]here defendant, represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence dehors the record, res judicata is a proper basis for dismissing defendant's petition for postconviction relief.
State v. Cole (1982), 2 Ohio St.3d 112, syllabus.
In the present case, although some evidence outside the record was presented with the post-conviction petition, the evidence itself is irrelevant for purposes of resolving the severance issue. According to Todd Schlosser's affidavit, Todd expressed concern before trial to his attorney about the joint trial with his co-defendant. At that time, Todd's attorney said he had considered filing a motion for severance but had decided against it. However, these facts, even if true, would not change the nature of the severance claim into something that could be brought in a post-conviction proceeding. The reason for this is that the pertinent evidence in either case would be the trial record and the effect of counsel's decision on the reliability of the trial.
Specifically, for purposes of considering the issue on direct appeal, the appellate court would not have needed to know if the defendant and counsel discussed or agreed to forego severance. Instead, the issue would have been whether trial counsel rendered ineffective assistance by failing to move for a separate trial. For Schlosser to have prevailed on this claim on direct appeal, he would have been required to show that his attorney's errors were so glaring that the attorney "`was not functioning as the "counsel" that the Sixth Amendment guarantees.'" State v.Murnahan (1996), 117 Ohio App.3d 71, 81 (citation omitted). Such an error must be a "`substantial violation of any of defense counsel's essential duties to his client.'" Id. Furthermore, even if Schlosser proved his right to counsel was violated, he would still have had to show a "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. at 82. For prejudice to exist, counsel's errors must have undermined the reliability of the trial. Id. Thus, for purposes of assessing performance on the issue of severance, as well as the issue of prejudice, the important factor would be the effect of counsel's decision, not what discussions were had with the client. This type of situation is particularly suited for resolution by way of direct appeal, since the evidence needed to assess the effect of the decision would be a matter of record.
Furthermore, the inquiry in this post-conviction proceeding is the same as it would have been on direct appeal, i.e., whether counsel was ineffective in failing to move for a separate trial. Accordingly, we agree with the trial court that Todd Schlossers' severance claim is barred by res judicata.
Based on the preceding discussion, the first assignment of error is overruled.
 II
In the second assignment of error, the Schlossers contend they were denied effective assistance of counsel because trial counsel failed to present a defense and failed to interview witnesses. To support this claim, Todd and John Schlosser submitted their own affidavits as well as affidavits from several potential witnesses. The trial court considered this evidence, but felt the failure to call the witnesses was not unnecessarily unreasonable. In particular, the court said the testimony would only have been useful in determining the "character" of the defendants. We disagree with this conclusion.
As was noted in our previous opinion in this case, the Schlossers owned and operated a telemarketing firm and allegedly represented two catalogue sales companies which sold credit card packages. Schlosser (May 24, 1996), Montgomery App. Nos. 14976 and 14968, unreported, p. 1. John and Todd Schlosser were charged with violations of the Credit Services Act in connection with solicitation of eleven customers from April 30, 1993, to April 30, 1994. According to the verified petitions and affidavits filed in support of post-conviction relief, the State presented more than two dozen witnesses during the course of a ten-day trial. One of the prosecution witnesses was a former telemarketer who had worked for the defendants for three days; another had been employed by the defendants for only three weeks. Other witnesses included the eleven victims and at least two other employees. However, the defense did not call any witnesses. On appeal, we noted, after reviewing the record, that the catalogue sales companies gave the defendants telemarketing scripts. Concerning these scripts, we commented that:
 [d]efendants revised the telemarketing scripts, so that when their telemarketers solicited customers over the phone no mention was made about purchasing items from a catalogue or any other requirements in order to obtain a VISA or MasterCard. Rather, the customers were told that upon payment of a specified fee, $149.50 or $179.50, they would receive either a VISA or MasterCard within thirty days. Defendants frequently "guaranteed" that customers would receive the credit card of their choice, and customers were told that the credit card would be unsecured with a $5,000 line of credit. Defendants also told customers that they were a federally regulated business.
 If a customer expressed a desire to have a VISA or MasterCard, the customer was required to give Defendants' telemarketers a bank account number and permission to remove from the account the applicable fee Defendants charged for the credit card application, $149 or $179. The customer would then speak with one of the "supervisors" in Defendants' operation, who would "verify" the information taken down by the telemarketer, including the customer's bank account numbers. This verification process was frequently performed by defendant Todd Schlosser, and those conversations were tape recorded.
 Defendants passed the information they received from customers, including that customer's bank account numbers, to various check processing companies. The check processing company would then electronically debit the money from the customer's bank account. After deducting its processing fee, the check processing company would send part of the money to * * * [the catalogue sales companies] to cover the cost of the package sold. The remainder of the money would be sent to bank accounts which were opened in the name of various employees of these defendants but which were controlled by Defendant John Schlosser.
 Throughout this entire process these Defendants never registered with the consumer finance division of the Ohio Department of Commerce. Further, although their customers never received the promised VISA or MasterCard, the fee which Defendants charged for such credit card was deducted from the customer's bank account. None of the victims of the scam were able to obtain assistance by utilizing the customer service phone numbers provided by the Defendants.
Id. at p. 1.
Later in our opinion, we observed that:
 the fraudulent or deceptive acts involved in this case included the consistent failure to tell customers who were solicited that they were required to purchase merchandise from a catalogue to qualify a Visa or Mastercard [sic], the failure to tell customers about any other requirements, and guarantees that the customer would receive a credit card upon payment of the applicable fee.
Id. at p. 19.
In an affidavit attached to the post-conviction petitions, Todd Schlosser says that he told his attorney of seven witnesses who were willing to testify on his behalf. Further, Todd asked his attorney to contact fourteen other persons who would be possible witnesses. John Schlosser's affidavit lists twenty-two witnesses whose names were given to his attorneys as witnesses on his behalf. John also asked his attorneys to interview the witnesses. Both Todd and John were represented by separate counsel at trial. However, none of the witnesses were ever interviewed by any of the attorneys, nor were any of the listed witnesses called at trial. In fact, as we noted above, the defense put on no witnesses.
We think a failure to investigate, if true, is not a matter of trial tactics, but violates an essential duty owed to clients. In State v. Johnson (1986), 24 Ohio St.3d 87, the Ohio Supreme Court stressed that:
 [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." * * * A lawyer has a duty to investigate "the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction.
Id. at 89 (citation omitted). Although Johnson involved capital sentencing, the court emphasized that counsel's duties are no different in a capital sentencing situation than they are in an ordinary trial. Id.
Among the witnesses identified to the Schlossers' trial attorneys were Denise Rogan, Molly Wagner, Stephanie Peterangelo, and Rob Peterangelo, all of whom had been employed by the Schlossers. Rogan's affidavit indicates that she was employed by the Schlossers as a telemarketer from approximately September, 1993, through December or January, 1994, i.e., during the time a number of the charges against the Schlossers arose. According to Rogan, she sold packages for a particular card during her employment. However, she told customers that the card was good only for purchases from a catalog and was not either a MasterCard or a VISA.
The dates of Wagner's employment were not specified in her affidavit. Wagner's testimony was that she sold products to clients whereby the clients received two $150 coupons. These coupons in turn could be used to purchase items from a catalogue. Wagner indicated that customers were never promised or guaranteed a VISA or MasterCard as a result of purchasing items from the catalogue. Further, Wagner stated that sometimes the management rewrote the scripts used for telemarketing to make it clear to clients that they were not being promised anything. Stephanie Peterangelo's affidavit indicated that she worked in accounts payable and overall administration for John Schlossers' business from 1998 through 1993. During that time, refunds were always given (and promptly) to dissatisfied customers. Peterangelo typed the scripts from most companies into the computer, and omitted no important information. The only changes were small changes to clarify or make the scripts read more fluidly. Further, the scripts used for the two catalogue companies clearly said that customers had to purchase and pay off $500 on their credit balance with the catalogue company. The customers would then be sponsored for a bank card. Peterangelo specifically denied that any scripts used to sell programs for the two catalogue companies ever made promises for a VISA or MasterCard with a $500 balance.
Likewise, Rob Peterangelo worked in the business from 1990 through approximately October, 1993. His testimony was that thousands of dollars of refunds and credits were made to customers during his employment and that customer service was a priority. As was previously mentioned, defense counsel did not interview any of these witnesses.
In light of the above discussion, we believe the Schlossers were entitled, at a minimum, to an evidentiary hearing on the issue of whether trial counsel was ineffective. In this regard, we stress that the State did not present any evidence contradicting the verified petition and affidavits. Unlike the trial court, we do not believe the witnesses simply offered character testimony. Instead, their testimony directly contradicts prosecution evidence that supported the convictions. However, although the second assignment of error has merit, we cannot grant any relief. As will become clear later in this opinion, the postconviction petitions were untimely, and the trial court should have simply dismissed the petitions. This results in a troubling situation where the defendants may have received ineffective assistance of counsel at trial, on direct appeal, and in post-conviction proceedings, but can receive no relief.
 III
The third assignment of error is based on the contention that the statutes under which the Schlossers were prosecuted, as well as the indictments, were unconstitutionally vague. Among other things, the Schlossers focus on the lack of a clear standard in the definition of a "credit services organization" in R.C.4712.02; the amorphous quality of certain phrases used in R.C.4712.01(C)(1) and R.C. 4712.07; and the lack of other prosecutions under the statute. The trial court briefly considered the constitutional claim, but rejected it on resjudicata grounds. We agree with the trial court, since any complaints about the constitutionality of the statutes or the indictments could have been raised at trial or during the direct appeal of this case. See, State v. Grimm (Apr. 25, 1997), Miami App. Nos. 96-CA-37 and 96-CA-38, unreported.
Furthermore, while certain evidence outside the record was presented, i.e., the "letter" from Thomas Floyd about his understanding and experience with the Credit Services Act, Floyd's testimony would have been irrelevant to a determination of whether the statutes were unconstitutionality vague. As a matter of due process, a law is void on its face if it is so vague that persons "of common intelligence must necessarily guess at its meaning and differ as to its application." Connally v. General ConstructionCo. (1926), 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322,328. Because this standard is objective, Floyd's testimony about whether he or others understood the law is not pertinent. Consequently, the trial court correctly found that challenges to the statutes and indictments were barred by res judicata. For this reason, the third assignment of error is overruled.
 IV
In the final assignment of error, the Schlossers claim they were erroneously denied an evidentiary hearing. Their argument in this context is that they have submitted sufficient operative facts which, if proven, would show a constitutional violation. For the reasons outlined in our discussion of the second assignment of error, we agree that an evidentiary hearing should have been held with regard to trial counsel's failure to conduct pre-trial investigation. However, as we noted, we are precluded from granting any relief. Consequently, the fourth assignment of error is also overruled.
 V
One final matter remains for discussion. In responding to the assignments of error, the State has mentioned that in addition to granting summary judgment, the trial court granted the State's motion to dismiss the postconviction petitions as untimely. The facts pertinent to this decision are as follows. The Schlossers were convicted in 1994 on the underlying charges, and our appellate decision was filed on May 24, 1996. As we mentioned earlier, our decision affirmed the convictions on the violations of the Credit Services Act, but reversed John Schlosser's conviction on charges of engaging in a pattern of corrupt activity under R.C. 2923.32(A) (the RICO statute). See, Schlosser (May 24, 1996), Montgomery App. Nos. 14976 and 14968, unreported.
The State appealed from our decision and the Schlossers filed cross-appeals. Ultimately, however, the only appeal considered was that of the State. See, Schlosser, 79 Ohio St.3d 329. By contrast, the appeals of John and Todd Schlosser were dismissed. See, State v. Schlosser (1996), 76 Ohio St.3d 1440 (dismissing appeal of John Schlosser for failure to prosecute with due diligence) (filed on Aug. 1, 1996); and State v. Schlosser (1996),77 Ohio St.3d 1421 (discretionary appeal not allowed) (filed on October 23, 1996).
During the time the cases were on appeal, the Schlossers filed their first post-conviction petitions, on September 23, 1996. However, on October 16, 1996, the Schlossers filed motions to withdraw the petitions without prejudice. The reason given was that the petitions were premature because the Ohio Supreme Court had granted direct review of the cases. The trial court then filed entries on October 28, 1996, granting the motions to withdraw, without prejudice.
As we mentioned, the Ohio Supreme Court did not decide the appeals of John and Todd Schlosser, but considered only the State's appeal. In fact, by the time the motions for post-conviction relief were dismissed, the Ohio Supreme Court had already declined to hear both of the Schlossers' appeals from their convictions. Thus, the reason given by the Schlossers' counsel for asking to dismiss the post-conviction petitions was incorrect under the facts of this case. It would also have been incorrect in any event, as R.C. 2953.21(C) specifically states that "[the court shall consider a petition that is timely filed under division (A)(2) of this section even if a direct appeal of the judgment is pending." Therefore, even if the Schlossers' appeals had been accepted by the Ohio Supreme Court, the trial court should have considered the petitions for post-conviction relief.
The second petitions were then filed on November 7, 1997. Notably, these petitions were virtually identical to the earlier petitions, in terms of issues raised and supporting materials provided. As we noted above, the trial court found the second petitions untimely and agreed with the State that the petitions should be dismissed. In discussing this point, the court commented that the original petitions had been timely filed. This was a correct statement. Specifically, at the time the Schlossers were convicted, R.C. 2953.21 allowed post-conviction petitions to be filed at any time. However, effective September 21, 1995, the statute was amended to provide a filing deadline of 180 days from the date the transcript was filed with the court of appeals on direct appeal. See, State v. Walker (May 1, 1998), Montgomery App. No. 16656, unreported. An exception was made for defendants who had been sentenced before the effective date of the amendments. In those cases, the time limit was the 180 day period or one year after the amendments, whichever was later. Further, because September 21, 1996, fell on a weekend, prisoners in this situation had until September 23, 1996, at the latest, to file their petitions. Id. at p. 2. Therefore, since the Schlossers' original petitions were filed on September 23, 1996, they were timely.
Because the original petitions had been dismissed without prejudice, the trial court decided to apply the savings statute in R.C. 2305.19, which would have permitted an additional year for refiling after the dismissal. The court thus reasoned that the Schlossers would have had until October 28, 1997, to refile their petitions. Unfortunately, the petitions were not filed again until November 6, 1997. Despite this fact, the trial went on to consider the merits of the petitions. We believe this was error.
Even if we were to assume that the savings statute applies, the petitions were clearly untimely and should have been dismissed by the trial court. In Walker, we affirmed the denial of a post-conviction petition filed eight months after the September, 1996 deadline. We made similar decisions in State v. Arnold (May 1, 1998), Greene App. No. 97-CA-108, unreported, and State v.Everette (Dec. 5, 1997), Montgomery App. No. 16458, unreported. As we stressed in State v. Hartbarger (Aug 29, 1997), Montgomery App. No. 16373, unreported, defendants are restricted to the rights granted by statute because "state post-conviction review is not a constitutional right." Id. at p. 1.
Further, in Walker, we noted that an untimely petition can be considered only if the petitioner meets the "strict requirements" in R.C. 2953.23. Id. at p. 2. Thus, the petitioner must first show one of the following:
 (a) * * * the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.
 (b) Subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.
R.C. 2953.23(A)(1). If the petitioner can establish one of these requirements, he must also show "by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted." R.C. 2953.23(A)(2).
The trial court did not consider R.C. 2953.23, nor did the Schlossers make any argument below that they could establish grounds for their untimely filing. After examining the materials submitted, we find that the requirements for an untimely petition were not met. First of all, the Schlossers did not claim below that any new federal or state right applied retroactively to their situation. Second, they cannot argue that they were unavoidably prevented from discovering the facts upon which the post-conviction petition was based. Specifically, the facts used to support the second petitions were the same facts relied on in the earlier, timely filing. In a similar situation in Walker, we held that the defendant failed to meet the requirements for having his untimely post-conviction petition considered. Walker, at p. 2.
In light of the foregoing, we have no choice but to affirm the trial court's dismissal of the petitions, even though we believe that the petitions would have merited an evidentiary hearing if they had been timely filed.
Based on the preceding discussion, the assignments of error are overruled and the judgment of the trial court is affirmed.
GRADY, P.J. and MILLIGAN, J., concur.
Hon. Lawrence Grey, Retired from the Court of Appeals, Fourth Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.
Hon. John R. Milligan, Retired from the Court of Appeals, Fifth Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.
Copies mailed to: Cheryl A. Ross, Kevin Schad, Hon. David A. Gowdown.