CITY OF PEPPER PIKE, APPELLEE, *v.*
FELDER, APPELLANT.

(No. 56083—Decided
December 4, 1989.)

*Robert L. Musser, Christopher L.
Gibbon* and *Jonathan D. Greenberg,* for
appellee.

*Steven S. Kaufman, Kelly Dowling
Stimpson* and *Leonard R. SteinSapir,*
for appellant.

KRUPANSKY, P.J. Defendant Linda
Felder was issued a citation for
violating Pepper Pike Ordinance
371.05(c), *viz.,* jogging beside another
jogger and causing a traffic hazard.
Defendant pled not guilty to the charge
and challenged the constitutionality of
the ordinance on grounds the or-
dinance was void for vagueness.

After a bench trial, the trial court
journalized an order on June 21, 1988
finding defendant guilty of violating
Pepper Pike Ordinance 371.05(c) and
concluding the ordinance was not un-
constitutionally vague. Defendant filed
a timely notice of appeal assigning four
errors.

The relevant facts follow:

On January 28, 1988, at approx-
imately 8:03 a.m., defendant and
Margaret Singerman were jogging
westbound on Shaker Boulevard in
Pepper Pike, Ohio. Officer Thomas
Gibson of the Pepper Pike Police
Department drove past Felder and
Singerman and observed the two
women jogging side by side on the
edge of the road.[1] Defendant was out
in the roadway about three feet jog-
ging beside Singerman[2] who was jog-
ging next to the side of the road. Gib-
son testified that eastbound traffic was
moderate to heavy since it was rush
hour. Gibson further testified he
observed automobiles slow down and
veer toward the center line to avoid
hitting the two joggers.

Officer Gibson stopped defendant
and her companion. Gibson issued
defendant a citation for "running
abreast" on Shaker Boulevard and
causing a traffic hazard in violation of
Pepper Pike Ordinance 371.05(a), (b)
and (c). Subsequently, the city deleted
the citation's reference to Sections
371.05(a) and (b) and proceeded on Sec-
tion 371.05(c) only.

At trial, defendant denied jogging
beside Singerman. Defendant also
challenged the constitutionality of Pep-
per Pike Ordinance 371.05(c) on
vagueness grounds. The trial court
found the ordinance constitutional and
further found defendant guilty.

---

[1] At trial, it was established Shaker
Boulevard, as it is situated in Pepper Pike,
is a two-lane road, one lane in each direc-
tion, with curbs and without sidewalks or
white lines on either side of the road.

[2] Singerman was not cited.

Defendant's first assignment of error follows:

"The trial court erred by upholding the constitutionality of Pepper Pike Ordinance Section 371.05(c) which is vague and overly broad as applied to appellant."

Defendant's first assignment of error lacks merit.

Defendant contends Pepper Pike Ordinance 371.05(c) is unconstitutionally vague and overbroad. Defendant's contention is unpersuasive.

"The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that the language of a criminal statute must be sufficiently definite 'to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute.' *United States* v. *Harriss* (1954), 347 U.S. 612, 617; *Papachristou* v. *City of Jacksonville* (1972), 405 U.S. 156, 162. The Due Process Clause prohibits the states from holding an individual 'criminally responsible for conduct which he could not reasonably understand to be proscribed.' *United States* v. *Harriss, supra,* at 617; *Wainwright* v. *Stone* (1973), 414 U.S. 21, 22; *Rose* v. *Locke* (1975), 423 U.S. 48, 49. * * *" *State* v. *Earlenbaugh* (1985), 18 Ohio St. 3d 19, 21, 18 OBR 16, 17, 479 N.E. 2d 846, 848, 52 A.L.R.4th 1153, 1157.

In the case *sub judice,* defendant has challenged the constitutionality of Pepper Pike Ordinance 371.05(c), which provides as follows:

"No person shall purposely walk, run, jog, stand on or otherwise be in or upon any public street or highway open to motor vehicle traffic other than in a safety zone, in such a manner as to obstruct or interfere with the free passage of vehicular traffic, or to cause an actual or imminent hazardous condition as to any vehicle or person."

Pepper Pike Ordinance 371.05(c) is sufficiently definite to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the ordinance. *Earlenbaugh, supra.* Under the language of the ordinance, a person is prohibited from being in or upon any public street open to motor vehicle traffic, other than in a safety zone,[3] in such a manner as (1) to obstruct the free passage of vehicular traffic, or (2) to interfere with the free passage of vehicular traffic or (3) to cause an actual or imminent hazardous condition to any vehicle or person.

A person of ordinary intelligence could read Section 371.05(c) and clearly be given fair notice that he/she would violate the ordinance by being on any public street in such a manner as to interfere with the free passage of traffic or cause a hazardous condition to any vehicle or person. Moreover, Section 371.05(c) is not overly broad since it applies to only persons on public streets who cause hazardous conditions, whether actual or imminent, or who interfere with the free passage of traffic.

The trial court did not err when it found Pepper Pike Ordinance 371.05(c) to be constitutional. Accordingly, defendant's first assignment of error is not well-taken and is overruled.

Defendant's second and fourth assignments of error follow:

"II. The trial court erred and deprived appellant of her constitutional right to due process of law by concluding that the facts of the case had been clearly established after the testimony of only one police officer and

---

[3] Pepper Pike Ordinance 301.34 defines "safety zone" as follows:

" 'Safety zone' means the area or space officially set apart within a roadway for the exclusive use of pedestrians and protected or marked or indicated by adequate signs as to be plainly visible at all times."

In the case *sub judice,* the parties stipulated that no safety zone existed on the section of Shaker Boulevard upon which defendant was jogging when she was cited.

before hearing testimony from any defense witnesses."

"IV. The trial court erred by finding appellant guilty of violating Pepper Pike Ordinance Section 371.05(c) when appellant's conduct did not violate the ordinance."

Defendant's second and fourth assignments of error lack merit.

In her fourth assignment of error, defendant argues in essence her conviction was contrary to the manifest weight of the evidence. Defendant's argument is unpersuasive.

A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. *State* v. *Eley* (1978), 56 Ohio St. 2d 169, 10 O.O. 3d 340, 383 N.E. 2d 132. In *State* v. *Martin* (1983), 20 Ohio App. 3d 172, 20 OBR 215, 485 N.E. 2d 717, the court set forth the test to be utilized when addressing the issue of manifest weight of the evidence. The *Martin* court stated as follows:

"* * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.* * * See *Tibbs* v. *Florida* (1982), 457 U.S. 31, 38, 42 * * *." *Martin, supra,* at 175, 20 OBR at 219, 485 N.E. 2d at 720-721.

Moreover, the weight of the evidence and credibility of witnesses are primarily for the trier of facts.

*State* v. *DeHass* (1967), 10 Ohio St. 2d 230, 39 O.O. 2d 366, 227 N.E. 2d 212, paragraph one of the syllabus.

At trial the parties agreed that on January 28, 1988, at approximately 8:03 a.m., defendant and Margaret Singerman were jogging westbound on Shaker Boulevard toward traffic in the eastbound lane. The parties further agreed there was traffic traveling in both directions on Shaker Boulevard. The city contended it was rush hour and the traffic was "moderate to heavy"; defendant contended the traffic was "relatively light." Defendant also stipulated she yielded the right of way to automobile traffic.

The city established defendant and her companion were running "abreast" with Singerman near the side of the road and defendant beside her about three feet out in the roadway. The city also established, through the eyewitness testimony of Officer Gibson, when approaching defendant several vehicles slowed and veered[4] toward the center line of the two-lane street, one lane in each direction. Gibson also testified he had warned defendant "within the previous month of this citation" that "there was going to be a stricter enforcement of our jogging ordinances."

Defendant testified on her own behalf. Defendant stated she and Singerman were not jogging abreast. Instead, defendant testified she and Singerman were jogging in single file with Singerman in front. Defendant further testified automobiles passing defendant and her companion neither "swerved around" them nor took any

---

[4] Defendant contended in oral argument the word "veered" was not used in the testimony. However, at page 14 of the transcript the following question and answer of Officer Gibson appears:

"Q. And what were you stopping her for?

"A. For running abreast and causing a hazardous condition with the traffic flow there, causing the traffic to *veer*, also it could be a hazard to her in the fact that, as running, as I stated, if someone had been struck there, there could have been a problem." (Emphasis added.)

type of "evasive action to get around" defendant and Singerman.

Considering the evidence adduced at trial, the city presented substantial evidence upon which the trier of fact could have found defendant purposely jogged upon a public street in such a manner so as to cause a hazardous condition, either actual or imminent, to any vehicle or person, or interfere with the free passage of vehicular traffic. Since there was one-way traffic in each direction and traffic was traveling simultaneously in both directions, Gibson's testimony is believable that vehicles slowed and veered toward the center line to avoid striking the defendant and her fellow jogger whether they were traveling abreast or in single file. Surely defendant does not contend an actual accident causing personal injury or property damage, or perhaps both, should have occurred before she could be cited under the ordinance. Defendant, by stipulation, admitted she yielded the right of way to oncoming traffic. This stipulation could be interpreted to mean defendant removed herself from a potentially hazardous position on the street so as not to cause an accident or interfere with the free passage of vehicular traffic. If one is not in a potentially hazardous position, whether actual or imminent, there would be no need to yield the right of way. Thus, defendant's conviction was not contrary to the manifest weight of the evidence.

In her second assignment of error, defendant contends the trial court's lack of impartiality denied defendant a fair trial. Defendant's contention is unpersuasive. At trial, after the city's first witness, the trial court stated as follows:

"THE COURT: * * *And if you want to go on, *I will be glad to sit here the rest of the afternoon listening to testimony,* but in the meantime I think we ought to go out and get something to eat, if you are not going to stipulate as to everything else. I mean if there is, except for the fact that two of them [defendant and Singerman] are going to say that they were not abreast and two of them [city's witnesses] are going to say that they were abreast.

"MS. STIMPSON: Your Honor —

"THE COURT: The chances are, chances are, because I usually go with the police on these things where they're in a position to observe, you know, I would go along with the police, chances are."(Emphasis added.)

While the trial court's remarks may have been somewhat imprudent, the record is devoid of any evidence firmly establishing the trial court had an unchanging predisposition of defendant's guilt. In the case *sub judice,* the trial court listened to defendant's testimony and witness and then made a finding of defendant's guilt. Moreover, the language of the trial judge's statements taken in toto shows his indecision and does not preclude a finding of not guilty for the defendant. Lastly, as noted above, the trial court's finding of defendant's guilt was not contrary to the manifest weight of the evidence. Accordingly, defendant's second and fourth assignments of error are not well-taken and are overruled.

Defendant's third assignment of error follows:

"The trial court abused its discretion and erred as a matter of law by taking judicial notice of the presence and volume of traffic on Shaker Boulevard."

Defendant's third assignment of error lacks merit.

Evid. R. 201(B) provides as follows:

"*A judicially noticed fact must be one not subject to reasonable dispute* in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot

reasonably be questioned." (Emphasis added.)

A trial court may take judicial notice of an adjudicative fact, whether requested or not, at any stage of the proceedings. *State* v. *Zeh* (1982), 7 Ohio App. 3d 235, 237, 7 OBR 298, 300, 455 N.E. 2d 18, 20.

At trial, the court made the following statements:

"In other words, we have established the facts. They seem to me to be clear. Is there anything in your mind, or in any of your minds, as to the facts being any different? It was eight o'clock in the morning, *I think the court can take judicial notice that this was rush hour normally and there is going to be traffic probably in both directions on that street* and, you know, that's it. *I am not really concerned at all whether there was a lot of traffic on the street either.*" (Emphasis added.)

The parties had a reasonable factual dispute as to the amount of traffic traveling Shaker Boulevard on the morning defendant was cited. However, it appears the trial court was unconcerned about the volume of traffic even though the court stated it was "rush hour normally." "Rush hour" would indicate the volume of traffic increases. However, the trial court unequivocally stated, "I am not really concerned at all whether there was a lot of traffic on the street either." Therefore, the trial court drew no conclusions as to the volume of traffic from the statement it made concerning rush hour. The other aspect of the trial judge's statement concerned traffic traveling in both directions on Shaker Boulevard, to this neither side disagreed. Both parties presented evidence that vehicular traffic was traveling in both directions at the scene. The central issue in the case *sub judice* as presented by defendant was not the amount of traffic, but whether any automobiles were on the road and how defendant's presence affected these vehicles.

Thus, it does not appear the trial court erred when it took judicial notice that rush hour was normally at 8:00 in the morning. However, error, if any, in the trial court's taking judicial notice of rush hour, is harmless. Crim. R. 52(A); *State* v. *Davis* (1975), 44 Ohio App. 2d 335, 346-347, 73 O.O. 2d 395, 401, 338 N.E. 2d 793, 802.

In order to establish a violation of Pepper Pike Ordinance 371.05(c), the city was required to prove defendant's jogging on Shaker Boulevard constituted an interference with the free passage of vehicular traffic or caused a hazardous condition. Whether defendant interfered with traffic or caused a hazardous condition does not depend upon the number of automobiles traveling on the street, but, rather, that defendant interfered with the free passage of traffic or caused a hazardous condition. Thus, a person could conceivably violate Section 371.05(c) by interfering with the passage of any vehicle. Furthermore, the city presented substantial evidence of defendant's guilt, including testimony of Officer Gibson who stated he witnessed several automobiles slow down and veer toward the center line to avoid striking defendant. See *Davis, supra.*

Since the volume of traffic on Shaker Boulevard when defendant was cited is irrelevant to defendant's conviction, the defendant was not prejudiced by the trial court's taking judicial notice that it was normally rush hour at 8:00 in the morning. Accordingly, defendant's third assignment of error is not well-taken and is overruled.

*Judgment affirmed.*

SWEENEY and PARRINO, JJ., concur.

THOMAS J. PARRINO, retired, of the Eighth Appellate District, sitting by assignment.