JOURNAL ENTRY AND OPINION.
{¶ 1} Defendant-appellant Denver Barry ("appellant") appeals from the judgment of the trial court which denied his motion to dismiss and found him guilty of violating the Mayfield Heights Codified Ordinance 917.14(a) on twenty-six counts.[1] For the reasons set forth below, we affirm.
 {¶ 2} The appellant owns a home in Mayfield Heights ("city") on S.O.M. Center Road. His home is situated on a large, deep lot and sits approximately 800 feet from the road. In response to two citizen complaints, a building inspector for the city visited the appellant's property and noticed overgrowth in his back yard, in violation of MHCO 917.14(a). The city sent a letter to the appellant instructing the appellant to cut his grass and eliminate the grass growing in between the stones in his front yard. According to the appellant, the wet conditions in the rear of his yard made it impossible to cut. In accordance with MHCO 917, the city issued a citation to the appellant on July 21, 2000 for non-compliance and continued to issue a citation per day until the appellant complied. The appellant received 25 citations ending on August 18, 2000. The city filed charges with the Lyndhurst Municipal Court on each date a citation was issued.
 {¶ 3} On September 25, 2000, the appellant filed a motion to dismiss all 25 cases, raising issues of unconstitutionality and selective prosecution. The municipal court held a hearing on November 8, 2000. The court denied the appellant's motion by journal entry on February 22, 2001 and found the appellant guilty of violating MHCO 917.14(a) on 26 separate counts. On October 22, 2002, the court imposed a $100 fine for each count, plus costs. The appellant now appeals, asserting three assignments of error for our review.
 {¶ 4} "I. The trial court committed reversible error in denying appellant's motion to dismiss."
 {¶ 5} In his first assignment of error, the appellant maintains that the city's ordinance is unconstitutionally vague. We disagree with the appellant.
 {¶ 6} Initially, we note that legislative enactments must be afforded a strong presumption of constitutionality. Cincinnati v. Langan
(1994), 94 Ohio App.3d 22, 30. Further, "a legislative act is presumed in law to be within the constitutional power of the body making it, whether that body be a municipal or a state legislative body. That presumption of validity of such legislative enactment cannot be overcome unless it appears that there is a clear conflict between the legislation in question and some particular provision or provisions of the Constitution. The question, whether a law be void for its repugnancy to the Constitution, is, at all times, a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative, in a doubtful case." NorthOlmsted v. North Olmsted Land Holdings, Inc. (2000), 137 Ohio App.3d 1, citing State ex rel. Dickman v. Defenbacher (1955), 164 Ohio St. 142,147, 128 N.E.2d 59, 63. (Citations omitted.) "A law should not be held unconstitutional on `slight implication' and `vague conjecture' but only where the court has a `clear and strong conviction' that the challenged law is incompatible with the Constitution." Id. The same presumption of constitutionality applies to ordinances. Elyria v. Rowe (1997),121 Ohio App.3d 342, 346, 700 N.E.2d 36, 38. "In order to prevail, the party asserting that an ordinance is unconstitutional must prove his assertion beyond a reasonable doubt." Cincinnati v. Langan, supra.
 {¶ 7} In State v. Collier (1991), 62 Ohio St.3d 267, 269-270, the Supreme Court set forth a void-for-vagueness test:
 {¶ 8} "A tripartite analysis must be applied when examining the void-for-vagueness doctrine. In [State v.] [Tanner (1984),15 Ohio St.3d 1], Justice Locher instructed that `these values are first, to provide fair warning to the ordinary citizen so behavior may comport with the dictates of the statute; second, to preclude arbitrary, capricious and generally discriminatory enforcement by officials given too much authority and too few constraints; and third, to ensure that fundamental constitutionally protected freedoms are not unreasonably impinged or inhibited. Proper constitutional analysis necessitates a review of each of these rationales with respect to the challenged statutory language.'" (internal citations omitted)
A. Notice
 {¶ 9} As to whether a challenged enactment provides citizens with fair warning so that they may comport with the dictates of the statute,
 {¶ 10} "The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that the language of a criminal statute must be sufficiently definite `to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute.'" Pepper Pike v. Felder (1989), 51 Ohio App.3d 143, 144, quoting State v. Earlenbaugh (1985), 18 Ohio St.3d 19, 21, 52 A.L.R.4th 1153, 1157.
 {¶ 11} "The essence of the vagueness doctrine is notice. An ordinance must be sufficiently clear in defining the activity proscribed so that it informs those who are subject to it what conduct on their part will render them liable to its penalties. A law which forbids the doing of an act in terms so vague that people of ordinary intelligence must guess at its meaning violates that person's right to due process of law." (internal citations omitted) Cleveland v. Isaacs (1993),91 Ohio App.3d 360, 364. Further, a litigant asserting a vagueness defense must demonstrate that the statute in question is vague as applied to the litigant's conduct without regard to its potentially vague applications to others. Parker v. Levy (1974), 417 U.S. 733, 757,41 L.Ed.2d 439, 94 S.Ct. 2547; In re Harper (1996), 77 Ohio St.3d 211, 221,673 N.E.2d 1253.
 {¶ 12} Finally, we note that MHCO 917.14(a) provides:
 {¶ 13} "The owner, occupant or person having the charge or management of any improved residential or commercial property situated within the City, within five days after written notice to do so, served upon him or her in conformity with Ohio R.C. 731.51, shall properly maintain landscaping and cut or destroy or cause to be cut or destroyed any and all noxious or poisonous weeds or vines growing upon the lot or parcel of land, and prevent the same from blooming, going to seed, exceeding a height of eight inches or spreading pollen which may be harmful to human health. Improperly maintained landscaping includes, butis not limited to, untrimmed bushes and shrubs; wild or uncontrolled growth of bushes, shrubbery or trees which are not cut, trimmed or maintained in a reasonable fashion; grass or groundcover encroaching upon the sidewalk or driveways; or other deleterious, unhealthful or unsightly growth or noxious material. Weeds shall be defined as all grasses, annual plants and vegetation, other than trees or shrubs, provided, however, that this term shall not include cultivated flowers or gardens." [Emphasis added.]
 {¶ 14} We note that "the Constitution requires only that the challenged statute or ordinance' * * * conveys [a] sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.'" United States v. Petrillo (1947),332 U.S. 1, 8. "Absolute or mathematical certainty is not required in the framing of a statute. Reasonable certainty of the nature and cause of the offense is all that is required * * *" State v. Schaeffer (1917),96 Ohio St. 215, 236. Furthermore, the Ohio Supreme Court has held that an ordinance is not void for vagueness merely because it could have been more precisely worded. State v. Dorso (1983), 4 Ohio St.3d 60, 61.
 {¶ 15} In this case, the ordinance provides that an owner shall properly maintain landscaping on his property and cut or destroy any noxious weeds or vines growing, preventing the same from growing to a height of eight inches. From the ordinance, there is a reasonable certainty that a failure to cut one's lawn for a period of approximately two months, during which time the grass or overgrowth far exceeds eight inches, would result in a violation of the ordinance.
B. Arbitrary enforcement
 {¶ 16} With regard to the appellant's claim that the ordinance vests police with too much discretion, the Supreme Court of the United States has noted, within the context of a void-for vagueness challenge, that "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." Graynedv. City of Rockford (1972), 408 U.S. 104. Thus, a law is impermissibly vague when it "delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis with the attendant dangers of arbitrary and discriminatory application." Id. Accord Akron v. Rowland (1993), 67 Ohio St.3d 374, 381, 618 N.E.2d 138.
 {¶ 17} In this case, the appellant has failed to prove that the city enforced the ordinance against him arbitrarily. While he submitted evidence to demonstrate that other city residents may have been in violation of the ordinance, he failed to prove that those residents were the subject of a citizen complaint, upon which the city thereafter failed to respond. In fact, the inspector testified that she had only received citizen complaints regarding the appellant's property. Furthermore, evidence presented by the city demonstrated that it had received two citizen complaints regarding his property which prompted an inspection and a warning, which gave the appellant fair notice and an opportunity to correct the problem. He was not cited for his yard until after he failed to comply.
 {¶ 18} The appellant further maintains that the city's complaint based system is inherently arbitrary. However, this court has already held that the enforcement of an ordinance on a "complaint-only" basis is not per se unconstitutionally enforced. Martin v. Independence Bd. ofZoning Appeals, Cuyahoga App. No. 81340, 2003-Ohio-2736, citing Elsaesserv. Hamilton Bd. of Zoning Appeals (1990), 61 Ohio App.3d 641.
 {¶ 19} We find that the appellant has failed to demonstrate that the city enforced the ordinance against him in an arbitrary, capricious or discriminatory manner.
C. Constitutionally protected freedoms not impinged upon.
 {¶ 20} The appellant asserts that the public interest cited by the trial court is insufficient to justify the impingement on his constitutional rights to enjoy his property. He further argues that the ordinance is designed to protect aesthetic considerations alone and does not bear a real and substantial relationship to the health, safety, morals and general welfare of the public.
 {¶ 21} An ordinance will not be disturbed unless it is shown that the action taken by the municipality in denying a property owner the unrestricted use of his property is arbitrary, capricious and bears no reasonable relationship to the health, safety, morals or general welfare of the public. City of Pepper Pike v. Landskroner (1997), 53 Ohio App.2d 63
at 70.
 {¶ 22} With regard to aesthetics, the Supreme Court of Ohio has held:
 {¶ 23} "The monetary interests of protecting real estate from impairment and destruction of value are includable under the general welfare aspect of the municipal police power and may therefore justify its reasonable exercise." Hudson v. Albrecht, Inc. (1984), 9 Ohio St.3d 69, paragraph two of the syllabus. In that case, the court stated:
 {¶ 24} "Some Ohio cases pertaining to the issue of aesthetics have stated that such consideration alone does not justify the exercise of the police power. State, ex rel. Killeen Realty Co., v. East Cleveland
(1959), 169 Ohio St. 375, 383 [8 O.O.2d 409]; Wondrak v. Kelley (1935),129 Ohio St. 268 [2 O.O. 159], paragraph three of the syllabus;Youngstown v. Kahn Bros. Building Co. (1925), 112 Ohio St. 654, 661;Pritz v. Messer (1925), 112 Ohio St. 628, 638. These decisions rest upon the idea that aesthetic tastes vary greatly among different people and are therefore too impractical and inconsistent a basis to be used in restricting property. State, ex rel. Killeen Realty Co., v. EastCleveland, supra, at 383; Youngstown v. Kahn Bros. Building Co., supra, at 661. The cases also reflect the thought that aesthetics is not a concern of the public health, safety or general welfare, but is, at most, an incidental or secondary reason for enacting legislation.
 {¶ 25} "It is noteworthy, however, that the nature of the police power is elastic, as it must be able to expand or contract in response to changing conditions and needs. See Euclid v. Ambler Realty Co., supra, at 387; Cincinnati v. Correll, supra, at 540. As such, more recent Ohio cases dealing with both zoning and nuisance issues have implied that there is a governmental interest in maintaining the aesthetics of the community and have recognized its role in the exercise of the police power."
 {¶ 26} We therefore reject the appellant's contention that aesthetics are not properly considered in questioning the constitutionality of an ordinance. Furthermore, we note that the trial court observed, and this court agrees, that the ordinance bears a direct relation to the health, safety, morals and general welfare of the community. As the trial court noted,
 {¶ 27} "Tall grass and/or weeds provide a breeding ground for potentially harmful insects and rodents. There may very well be a safety factor involved when one considers the location of the tall grass and/or weeds as a motorist's vision or necessary line of sight may very well be obstructed. The ability of an emergency vehicle to carry out its function may be impeded if, for example, the problem area surrounded a city fire hydrant. The foregoing examples/reasons are by no means exhaustive but they are illustrative of reasons why it is a municipality's right and duty to enforce such legislation." City of Mayfield Heights v. DenverBarry (February 22, 2001), CRB00545-CRB00662, at page 3.
 {¶ 28} Accordingly, we reject the appellant's contention that MHCO 917.14(a) is unconstitutionally vague in relation to language regarding properly maintained landscaping. Instead, we conclude that this language affords people of ordinary intelligence a reasonable opportunity to know what would cause him or her to be in violation of the ordinance, and that the ordinance comports with constitutional rights. We therefore overrule this assignment of error.
 {¶ 29} "II. The trial court committed reversible error by not dismissing charges against defendant-appellant for selective prosecution."
 {¶ 30} In his second assignment of error, the appellant maintains that the trial court erred in failing to dismiss the charges based on selective prosecution of the city's ordinance. We disagree.
 {¶ 31} In State v. Getsy (1998), 84 Ohio St.3d 180, 203, the Ohio Supreme Court reiterated the selective prosecution test, stating:
 {¶ 32} "In State v. Flynt (1980), 63 Ohio St.2d 132, 134, 17 Ohio Op.3d 81, 82, 407 N.E.2d 15, 17, we adopted the following test with regard to selective-prosecution claims:
 {¶ 33} `To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights."' (Quoting United States v. Berrios [C.A.2, 1974], 501 F.2d 1207, 1211.) See, also, State v. Lawson (1992),64 Ohio St.3d 336, 346, 595 N.E.2d 902, 910.
 {¶ 34} "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution. United States v. Armstrong (1996), 517 U.S. 456, 463,116 S.Ct. 1480, 1486, 134 L.Ed.2d 687, 698. As the court stated inArmstrong, "the standard is a demanding one." Id.
 {¶ 35} In this case, the appellant successfully demonstrated the first prong of the selective prosecution test. That is, that while others similarly situated had not generally been proceeded against because of failing to properly maintain their property, the appellant was singled out for prosecution. To support this, the appellant submitted a myriad of photos demonstrating that other residents in the city had landscaping which might be deemed "improperly landscaped" under the ordinance.
 {¶ 36} However, the appellant failed to meet the heavy burden of demonstrating that the city's prosecution was invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. The appellant contends that he was prosecuted by the city only after printing unfavorable political views about the current mayor in a newspaper he used to publish. However, the appellant merely stated at trial that he felt the article he published prompted the citations by the city. The appellant did not present evidence of any article published, nor any witnesses to demonstrate that the city was acting in bad faith. We find no support in the record for the appellant's contention and find that the appellant failed to meet the heavy burden of demonstrating a selective prosecution claim.
 {¶ 37} The appellant further argues that the issuance of twenty-five citations for a relatively minor offense, when no one else is prosecuted for the same offense, should be prima facie evidence of invidious intentions on the part of the city. Citing no legal authority for his proposition, we decline to adopt the appellant's position. As stated above, the policy of the city was to respond to citizen complaints. The fact that the appellant was cited daily for twenty-five days, does nothing more than indicate that the city was on notice of the appellant's noncompliance and intended to ensure compliance with the ordinance. We find no merit to the appellant's second assignment of error.
 {¶ 38} "III. The trial court committed reversible error in finding defendant-appellant guilty without determining criminal intent."
 {¶ 39} In his third and final assignment of error, the appellant alleges that the trial court erred in finding him guilty of violating MHCO 917.14 without a finding of criminal intent because, he maintains, the ordinance is not a strict liability ordinance.
 {¶ 40} R.C. 2901.21(B) provides:
 {¶ 41} "When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."
 {¶ 42} "It is well-established that when a statute reads, `No person shall * * *,' absent any reference to the requisite culpable mental state, the statute is clearly indicative of a legislative intent to impose strict liability. State v. Cheraso (1988), 43 Ohio App.3d 221,223. Further, "[t]he legislature, in enacting laws in furtherance of the public health, safety and welfare, may impose strict liability for certain conduct, excluding from the statutory language elements of scienter or guilty knowledge." State v. Borges (1983), 10 Ohio App.3d 158, 159-160, citing United States v. Balint (1922), 258 U.S. 250, 252-253.
 {¶ 43} In this case, the appellant correctly notes that the prefix "no person shall" is absent from the ordinance; however, the prefix's meaning is not. The ordinance provides that "The owner * * * of any * * * residential or commercial property * * * shall properly maintain landscaping * * *." We conclude that this language is analogous to "no person shall" in that it conveys to a city resident what the owner, occupant or person having the charge or management of a property must do to comply with the ordinance. Upon further reading, a city resident is notified that "[w]hoever violates or fails to comply with any of the provisions of this chapter is guilty of a minor misdemeanor and shall be fined * * *." Therefore, despite the fact that the exact words "no person shall" is not at the beginning of the ordinance, we find that the ordinance plainly indicates an intent to impose strict liability and overrule the appellant's third assignment of error.
Judgment affirmed.
MICHAEL J. CORRIGAN, P.J., and ANNE L. KILBANE, J., concur.
[1] Twenty-five citations appear in the record. Both appellant and appellee note throughout their briefs that the appellant was cited twenty-five times. There is no error assigned by the appellant regarding the trial court's entry finding him guilty of violating MHCO 917.14(a) twenty-six times.